```
 1                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF PENNSYLVANIA
 2
     VENTURI TECHNOLOGIES, INC.,      )
 3                                    )
                      Plaintiff,      )  2:10-CV-04471-LP
 4                                    )
                      vs.             )  Philadelphia, PA
 5                                    )  September 9, 2010
     JOEL HEFFELFINGER, ET AL.,       )
 6                                    )
                      Defendant.      )
 7

 8          TRANSCRIPT OF PRELIMINARY INJUNCTION HEARING
                 BEFORE THE HONORABLE LOUIS H. POLLAK
 9                 UNITED STATES DISTRICT JUDGE

10   APPEARANCES:

11   For the Plaintiff:       LARRY L. TURNER, ESQ.
                              SEAN WALKER SLOAN, ESQ.
12                            MORGAN, LEWIS & BOCKIUS, LLP
                              1701 Market Street
13                            Philadelphia, PA 19103

14   For the Defendant:       HOLLY C. DOBROSKY, ESQ.
                              GUY R. SCIOLLA, ATTORNEY AT LAW
15                            1910 Land Title Building
                              100 South Broad Street
16                            Philadelphia, PA 19110

17   ESR Operator:            M. HARVEY

18

19

20

21

22   Proceedings recorded by electronic sound recording.

23          Veritext National Court Reporting Company
                      Mid Atlantic Region
24           1801 Market Street - Suite 1800
                    Philadelphia, PA 19103
25                      888-777-6690
```

1                          I N D E X
2

3      Opening statement for the Plaintiff      9

4      Opening statement for the Defendants     22

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              THE COURT:  Good morning.

2              IN UNISON:  Good morning, Your Honor.

3              THE COURT:  Hi.  Thank you for coming.  Please sit

4       down.

5              Mr. [Strie-ak]?

6              MR. STRYJAK:  Yes, sir.  Josh [Stree-ok].

7              THE COURT:  [Strie-ak] or [Strie-jak]?

8              MR. STRYJAK:  [Stree-ok], sir.

9              THE COURT:  [Stree-ok].  Nice to meet you.

10             UNIDENTIFIED SPEAKER:  Give mine a shot, Judge.

11             MS. DOBROSKY:  Good morning, Your Honor.  Very well,

12      Your Honor.  Holly Dobrosky.

13             MR. TURNER:  Good to see you, Your Honor.

14             THE COURT:  Larry, good to see you.

15             MR. TURNER:  Good morning, Your Honor.

16             THE COURT:  Why don't you all sit down?

17             THE COURT REPORTER:  Thank you, Your Honor.

18             THE COURT:  I want to begin by inquiring of counsel

19      whether they have undertaken to have any conversations about

20      this matter.  Ms. Dobrosky and Mr. Turner, Mr. Sloan, have you

21      been -- you know, you're welcome to stand, but there's no such

22      formality required in this courtroom.  You're --

23             MS. DOBROSKY:  Your Honor, if I may.

24             THE COURT:  -- perfectly able to speak from sitting.

25             Yes, go ahead.

1          MS. DOBROSKY:  If I may address Your Honor's

2     question, I did enter my appearance in this matter, as you

3     know, late yesterday.  But prior to that, I did have

4     conversations with Mr. Turner for a possible settlement of

5     this matter.  My clients have every intention of attempting to

6     settle this matter.  They have no desire to go through

7     extended litigation and depositions and discovery and

8     subpoenaing all corporate records from Venturi and the

9     possibles, you know, their corporate records.  We tried to do

10    that.  We were unable to do that.

11         Mr. Turner and I actually had three very lengthy

12    conversations yesterday, and we went through the different

13    parameters of any proposed settlement.  Unfortunately, I think

14    because maybe I didn't have enough information from his

15    client, we were unable to do that, but that's our intention.

16    Our intention is for a settlement.

17         My clients, they need to make a living.  They are --

18    they operate the businesses that they do, and they operate

19    them in -- well, let me start with, Venturi --

20         THE COURT:  Well, I don't want to hear an argument --

21         MS. DOBROSKY:  Okay.

22         THE COURT:  -- now, about the merits at all.

23         MS. DOBROSKY:  Very well.

24         THE COURT:  I want to know whether there's -- whether

25    further conversation might not be fruitful --

1           MS. DOBROSKY:  It would -- it would, Your Honor.

2           THE COURT:  -- and avoiding, for all of the parties,

3     the expense and uncertainties involved in further litigation.

4     You've said that you thought that you didn't have complete

5     information with respect to the plaintiff and obviously, that

6     can be supplied to you by Mr. Turner and Mr. Sloan.

7           May I hear from you, Mr. Turner?

8           MR. TURNER:  You may, Your Honor.  Good morning,

9     again.  Your Honor, we did have what I thought were very

10    productive conversations yesterday afternoon, actually, late

11    into the evening in trying to get this resolved.  The issue

12    for us, Your Honor, is two-fold.  First of all, we need --

13          THE COURT:  I'm going to ask you to sit because it's

14    easier to reach the --

15          MR. TURNER:  Okay, can you hear me now?

16          THE COURT:  Thank you.

17          MR. TURNER:  There are two issues that are

18    significant for us:  first and foremost making sure that the

19    covenants, both the noncompete, the nondisclosure, and the

20    nonsolicitation are honored within those limited geographic

21    areas identified.

22          THE COURT:  Good.

23          MR. TURNER:  That's of the utmost importance to us.

24    And I think we made some progress along those lines.  The

25    second issue is making sure that the costs that have gone into

1    getting the defendants to adhere to the obligations to which

2    they made earlier were enforced.  So with those two

3    parameters, we're more than willing to talk to the defendants

4    to try to work this out.

5              THE COURT:  I'm not sure what you mean by the --

6              MR. TURNER:  I'll be plain, Your Honor.

7              THE COURT:  -- the costs.

8              MR. TURNER:  Litigation costs.  We've gone through a

9    lot of work to enforce what should have been a fairly clear

10   situation.

11             THE COURT:  You're asking the defendants to pay your

12   attorneys' fees?

13             MR. TURNER:  That's correct, Your Honor.

14             THE COURT:  Well, that -- I can understand that that

15   might be something of an impediment.  But I think, Ms.

16   Dobrosky and Mr. Turner, what you've both said leaves me with

17   a sense that between yesterday and now, you might be able to

18   make some progress on resolution of this, and so what I'm

19   going to ask you to do -- we're now at 10:30 -- suppose you

20   spend the next thirty minutes talking with each other and

21   seeing if you can't move things forward.  If it be the case,

22   as Ms. Dobrosky says, that her clients are eager to move

23   forward and reach a resolution without extended litigation,

24   then that suggests that perhaps there can be agreement with

25   respect to enforcing the covenants not to compete and not to

1    solicit, and that that moves the whole matter forward to a

2    point where agreement can be arrived at with, perhaps, some

3    thoughts, some compromise with respect to whatever costs have

4    been incurred by the plaintiffs.  Needless to say, whatever

5    those costs are, they would be very substantially multiplied

6    if we go beyond 11 o'clock this morning.

7            So I'll ask you to do some talking, and I'll be back

8    in thirty minutes, unless you advise me that you want to do

9    some more talking.

10           MR. TURNER:  Your Honor, if I may, is there a

11   conference room that we may use?

12           THE CLERK:  There is one open.

13           THE COURT:  Surely, yes.

14           THE CLERK:  Right outside.

15           THE COURT:  I think -- Tony, do you want to -- can

16   you --

17           THE CLERK:  We've opened one, already.

18           THE COURT:  Oh, you have.

19           MR. TURNER:  Okay.

20           THE COURT:  I see.

21           MR. TURNER:  Thank you.

22           THE COURT:  All right.  Good.

23           MR. TURNER:  Thank you, Your Honor.

24           THE COURT:  Sure.

25           MS. DOBROSKY:  Thank you, Your Honor.

1          (Recess from 10:32 a.m. until 11:25 a.m.)

2               THE COURT:  Hello.  Please sit down.

3               Well, tell me whether your conversations have been

4     fruitful.

5               MS. DOBROSKY:  Your Honor, we have tried very much to

6     reach a settlement but we've been unable to do so.

7               THE COURT:  Well, that seems unfortunate.  It -- this

8     appeared to be a matter in which -- how shall I put it --

9     settlement be arrived at.  If it be the case that the claims

10    may have some veracity, then I would have thought that things

11    would've moved towards a resolution.  However, if that's not

12    the case, we'll proceed to a hearing on the application for a

13    preliminary injunction.

14              It's 11:25 now, 11:28.  We can make some progress by

15    lunch.  But we will have to see how long things will take

16    thereafter.  I hope that as we go forward with this hearing,

17    the parties will continue to contemplate whether there is not

18    a way of overcoming whatever the apparent difficulties are

19    about settlement.  Certainly, the lunch hour will provide you

20    with a further opportunity with the defendants here, the

21    individual defendants here and, in essence, their corporations

22    here, and doubtless plaintiff's counsel can be in touch with

23    Venturi very promptly.

24              So we will go forward.  Mr. Turner, you want to

25    proceed?

1          MR. TURNER:  Thank you, Your Honor.  Your Honor, I

2     think I'll -- can you -- I think I'll come right to the

3     essence of why we're here and who's here.

4          THE COURT:  Mr. Turner, let me say, I'm delighted to

5     have you at the lectern if that's your preferred place, but if

6     you choose, you're perfectly at liberty to stay at counsel

7     table.

8          MR. TURNER:  All right, I'm comfortable for here --

9          THE COURT:  I see.

10          MR. TURNER:  -- here at this point, Your Honor.

11          THE COURT:  You won't have Mr. Sloan right at your

12     elbow there.

13          MR. TURNER:  He's always just an arm length away.

14          Your Honor, Venturi's a national business that's over

15     a decade old, and their primary focus is cleaning:  restoring

16     carpets, furnishings, and other type materials in multifamily

17     and single-family residential homes.  They have conducted that

18     business for over a decade in over eleven states.  Now, at

19     issue, today, are four states, and they are the four states in

20     which the individual defendants performed services during the

21     time that they were employed by Venturi.  They are Delaware,

22     Pennsylvania, New Jersey, and Maryland.

23          Now, the way in which Venturi handles services

24     provided to those four states is out of a base of operations

25     located in King of Prussia, and that's the office out of which

1      the two individual defendants worked during the time that they

2      worked for Venturi.  The cornerstone of the business performed

3      by Venturi is customer relationships and the confidential

4      information from the standpoint of pricing, the way they go

5      about performing their work.  They are brought in -- if we're

6      talking about an apartment complex-type setting -- if there's

7      a major storm that needs to be -- and there's -- the storm has

8      caused damage to an apartment complex or an individual home --

9      to help dry the carpets, prevent mold, or address fire damage

10     or water damage in the case of a fire.  The business operates

11     not with -- or in a situation where you have multiple written

12     contracts guaranteeing long-term business.  It is truly a

13     relationship business.  Work depends upon receiving a call on

14     a given day or a given week to bring someone out to take care

15     of what is perceived by the owner of that home or apartment

16     building as an emergency.  That is the rationale -- those

17     relationships and the importance of their confidential

18     information is the rationale behind them having every service

19     technician, every sales manager, and every base manager sign

20     an agreement containing the three covenants that we've been

21     talking about thus far:  a covenant not to compete, a

22     nonsolicitation covenant, and a covenant not to disclose.

23          Now, the individual defendants here are two former

24     employees of Venturi.  Prior to being employed by Venturi,

25     they had no experience whatsoever in the business.  Venturi

1    made a substantial investment in their training, provided them

2    with confidential information on how to simply perform the

3    work that needed to be done.  There are certain special types

4    of equipment that are used, ranging from detecting moisture to

5    prevent mold to a wide array of other things that are beyond

6    my expertise to describe to you.  But the purpose here is just

7    to convey to you that there are things that need to be done in

8    order to address damaged residencies that are special to this

9    industry.  And this company has perfected a way of doing it

10   that they believe is special and unique to them.  And they've

11   been in the business for over a decade, so they're doing

12   something right.

13           THE COURT:  Mr. Turner, if I may interrupt for a

14   moment, your opening statement will be very helpful, just as

15   Ms. Dobrosky's statement will be, with the understanding, of

16   course, that your counsel reciting your claims and it'll call

17   for proof in due course when we have testimony.

18           But I wanted to inquire about this.  You said a

19   couple of times that the plaintiff has been in business over a

20   decade.  Could you tell me how much over a decade?  Are we

21   talking about 1999?

22           MR. TURNER:  '94 or '97, I believe.

23           THE COURT:  I see.  And the end event --

24           MR. TURNER:  And that's operating, Your Honor -- I'm

25   sorry.

Page 12

1            THE COURT:  I beg your pardon?

2            MR. TURNER:  That's operating under the name of

3    Venturi.  It's gone through some corporate mergers and

4    changes.  That's why I'm a little --

5            THE COURT:  I see.

6            MR. TURNER:  But I believe it's '94 or '97.

7            THE COURT:  And Mr. Heffelfinger and Mr. Stryjak were

8    hired when?  I have the impression from the complaint that Mr.

9    Heffelfinger has been there longer than Mr. Stryjak.

10            MR. TURNER:  That's correct.  My understanding is

11    that Mr. Heffelfinger was initially hired in 2000 or

12    thereabouts.

13            THE COURT:  Um-hum.  And Mr. Stryjak came along three

14    years later or --

15            MR. TURNER:  I think --

16            THE COURT:  -- something like that?

17            MR. TURNER:  -- in '04/'05.

18            MS. DOBROSKY:  It was October of 2005, Your Honor, if

19    I may interject.

20            THE COURT:  2005, all right.  Was 2000 right for Mr.

21    Heffelfinger?

22            MS. DOBROSKY:  It was, Your Honor.  It was March of

23    2000.

24            THE COURT:  All right, thank you.  Okay.

25            MR. TURNER:  My memory's better than I thought, Your

 1   Honor.  2000, 2005.

 2            With respect to the corporate defendants, Your Honor,

 3   it's our understanding that the corporate defendants that have

 4   been identified to date are either owned by or are

 5   substantially affiliated with the individual defendants and

 6   have been since the time that they were employed by Venturi.

 7   Okay?

 8            The overall document that leads us here today is the

 9   agreement that contains the three covenants that I described

10   earlier:  the noncompete, the nonsolicit, and the

11   nondisclosure.  They are contained in -- starting with the

12   noncompete -- paragraph 5.  Goes through an in-depth

13   description of what is included in the noncompete.  And I'll

14   just summarize it briefly for Your Honor.  The duration, or

15   the term of the noncompete is during the time of employment

16   and for twenty-four months after separation.  The physical

17   restrictions apply, as I mentioned before, to four states:

18   Pennsylvania, New Jersey, Maryland, and Delaware.  But it

19   refines it even further than that, Your Honor.  It focuses

20   upon seven counties in Pennsylvania, five counties in New

21   Jersey, three counties in Maryland, and one in Delaware.  So

22   in essence, the covenants don't apply to the rest of those

23   states.  To the rest of the counties within those states.

24            With respect to the services, the noncompete applies

25   to the same or substantially similar services that the

1    employee performed during the time that he or she was employed

2    by Venturi.

3         With respect to the nonsolicitation covenant, once

4    again, it applies during the time of employment, and for the

5    nonsolicitation, it's only eighteen months after separation.

6    And that's found in paragraph 6.  And the employee, there, is

7    prohibited from inducing other employees within the territory

8    from leaving the company or from contracting customers -- or,

9    contacting customers anywhere with whom they had contact

10   during the last two years of their employment with Venturi.

11        The nondisclosure covenant appears in paragraph 7.

12   There, the duration is very similar to the nonsolicit:  during

13   the term of employment and for eighteen months after

14   separation.  And it applies to the proprietary and

15   confidential information of the company and requires an

16   employee who leaves the company returns all equipment and

17   information before leaving.

18        Now, in light of the law here, we believe that the

19   covenants are reasonable, both from the standpoint of the

20   term -- the law in Pennsylvania recognizes three-year terms in

21   analogous situations; here, we've only applied a maximum of

22   two and a minimum of eighteen months -- two years or eighteen

23   months.  The geographic scope is limited with respect to the

24   areas which the individual defendants worked, and narrows it

25   so far as to individual counties within the states in which

1    they worked.  And it focuses on the services, the information,

2    the relationships, the corporate opportunities that were all

3    cultivated during the time that they were employees of

4    Venturi.

5         Now, from the standpoint of the evidence, here, we've

6    supplied the Court with a fairly comprehensive overview of

7    what we know, up to this point.  But for the sake of this

8    hearing, Your Honor -- and I'm happy to address any questions

9    you have -- I'd just like to focus on two documents, both of

10   which were authored by one of the individual defendants.  They

11   are attached to the complaint as Exhibit H and Exhibit J.

12   They are e-mails prepared by Mr. Heffelfinger, unsolicited by

13   Venturi, after he left the employment of Venturi.  And I want

14   to focus on those e-mails for four reasons.  And there are a

15   number of disclosures in both e-mails, but I just want to

16   focus on four for our purposes here today.

17        The first is, within those two e-mails, Mr.

18   Heffelfingel -- Heffelfinger, excuse me -- discloses that he

19   and the other individual defendant were owners of a company

20   that competed with Venturi.  Outright admission.  They also

21   admit to being affiliated with, as they describe it, other

22   companies that competed with Venturi.

23        The second point:  they also disclosed that they used

24   the relationships that they built over the years while they

25   were Venturi employees for their own personal gain.  And that

Page 16

1    appears on page 4.  The first point appears on pages 3 and 4.

2              THE COURT:  You're not talking about Exhibit H?

3              MR. TURNER:  Exhibit H and J.  It's an e-mail string.

4    The original e-mail appears in J, and there's a response from

5    the CEO of our company to which Mr. Heffelfinger responds

6    again, and that's H.

7              THE COURT:  Oh, I see.

8              MR. TURNER:  All right?

9              THE COURT:  So J comes first and then --

10             MR. TURNER:  In chronologic -- chronologically, yes,

11   that's correct.

12             THE COURT:  Um-hum.

13             MR. TURNER:  J's first.

14             The third point, again, an unsolicited e-mail that

15   started this.  In response to a question posed by the CEO of

16   Venturi with respect to why he should believe anything Mr.

17   Heffelfinger has to say after he pointed out to him that he

18   stole company property and walked away with a computer, he

19   responds that, in essence, yes, "I stole the computer".  And

20   that appears on page 1 of Exhibit H.

21             But I think the most important point --

22             THE COURT:  Hold on one second.

23             MR. TURNER:  Sure, Your Honor.

24             THE COURT:  On page 1?

25             MR. TURNER:  Yes, of Exhibit H.

1           THE COURT:  Let's see.  Wanted to locate what it is

2     that you -- thanks.

3           All right, um-hum.  Thank you.

4           MR. TURNER:  And Your Honor, if you would turn -- if

5     you want to follow along, here --

6           THE COURT:  I would.

7           MR. TURNER:  -- to what I think is probably one of

8     the most telling aspects of that e-mail communication, and

9     that appears on page 5 of Exhibit H, and that is where Mr.

10    Heffelfinger says, in essence, discloses why he kept the

11    activities that he and the other individual defendant were

12    involved in a secret, contrary to his agreement, contrary to

13    basic decency.  Basically said, I kept it a secret for two

14    reasons:  one, Steve Abate, who is the CFO of the company, and

15    two, in essence, because if I knew if I told you, you'd fire

16    me.

17          Venturi, here, Your Honor, merely seeks to protect

18    its interests, its customer relationships, its confidential

19    information stemming from pricing to the general know-how with

20    respect to doing what they do when it comes to cleaning

21    multifamily and single-family homes.  As I mentioned earlier,

22    they realize and have routinely protected this information and

23    those relationships by having their service technicians, their

24    salesmen, and their base managers, all people in whom they

25    have invested a lot of money and people that they expose to

1    their customers, sign the agreement containing these

2    covenants.

3           Now, with respect to the irreparable harm, here, I

4    think it's pretty well settled in this jurisdiction that when

5    a company representative is leaving the company with goodwill

6    and knowledge of the operations, that is presumed.  The time

7    sensitivity here is another aspect of it, Your Honor.  This is

8    a highly competitive business.  As I mentioned before, many of

9    the customers don't sign or have long-term agreements.  So it

10   really does come down to a company's ability to maintain

11   customer relationships and their pricing information and other

12   confidential information.  Here, with the information and

13   relationships that these individual defendants have cultivated

14   over the years that they have been with the company,

15   particularly in this area, they could literally derail this

16   company in a matter of months and put a number of innocent

17   people out of work.

18          Both defendants, as you'll note on page 4 of the

19   agreement, agreed to injunctive relief.  And that's in

20   paragraph 8.  Now --

21          THE COURT:  We're back, now, at the covenants?

22          MR. TURNER:  That's correct, Your Honor.

23          THE COURT:  Hold on just one moment.  I want to take

24   a look at that.  All right, thank you.

25          MR. TURNER:  With respect to the balancing of the

1    effect of an injunction on the defendants, Your Honor, first

2    and foremost, I think the principal consideration, here,

3    should be having the defendants honor the agreement that they

4    signed at the time that they worked for Venturi.

5        Even with that, even if the agreements are enforced

6    to the full force of the language in those agreements, they

7    still have an opportunity to earn a living.  As I mentioned

8    before, the agreements are focused on specific counties within

9    the states.  These are people who, for the last several years,

10   have been traveling and conducting business around several

11   states, four of which I've identified.  Even within those

12   states -- let's take Pennsylvania, for example -- they still

13   have the opportunity and ability to conduct business in

14   Harrisburg; major area.  All of northern New Jersey; major

15   area.  Baltimore.  All of those are areas within the states in

16   which the covenants apply but still give them an opportunity,

17   not banking upon Venturi's customers and relationships, but an

18   opportunity for them to build their own, the way Venturi had

19   to do.

20       I think, Your Honor, that again, in an attempt to

21   just stay focused on what is truly important here -- and I'm

22   sure you've gone through the papers -- both of these

23   defendants were clearly aware of the extent of the covenants

24   when they signed them.  Now, after the fact, particularly if

25   you take a look at the e-mail, it's clear that they paid very

 1    little regard to that.  Even during the time that they were

 2    working for Venturi, using Venturi's resources to further

 3    their own personal gains and those of their friends, a

 4    preliminary injunction is the only way to return, at least for

 5    the moment, the parties to the status quo and to give Venturi

 6    an opportunity to figure out, if it can, what all has been

 7    done here.

 8              One of the items that I mentioned earlier was the

 9    taking of a computer.  As you will note from the complaint,

10    the computer that was taken was very significant for a number

11    of reasons.  We believe that Mr. Heffelfinger used that

12    computer to house a substantial amount of confidential

13    information regarding the four states that we talked about and

14    the customer relationships and pricing information within

15    those states and excluded or prevented the rest of the company

16    from getting access to that.  That computer left with him the

17    day after he was terminated, and when he was asked to return

18    it, as you could see from the e-mail that I pointed out to

19    Your Honor, not only refused to do so, but set out his own

20    terms for the returning of the computer after he had an

21    opportunity to alter information on it.

22              THE COURT:  Mr. Turner, go back a paragraph.

23              MR. TURNER:  Yes.

24              THE COURT:  I understood you to say, but tell me if

25    I've got it wrong, that the computer was -- this computer was

1    the place where price and customer identification was housed,

2    that the plaintiff didn't have this information elsewhere?

3              MR. TURNER:  Well, I don't profess to be a computer

4    expert, Your Honor.

5              THE COURT:  Well, you're talking to another.

6              MR. TURNER:  But it's my understanding that when this

7    system was put into place at Venturi -- I hope I get this

8    right -- it was a network system, and that Mr. Heffelfinger

9    was able to divert or route certain information to his

10   computer and his computer only.  The company did not become

11   aware of that until -- he also had a substantial amount of

12   billing responsibility.  The company did not become aware of

13   the extent of the information that he had until the computer

14   was gone.  Hope I've described it accurately, but in essence,

15   that's my understanding of the situation.

16             THE COURT:  Well, I understand that a computer may,

17   according to your claim, may have had a lot of valuable

18   information on it.  But the corollary that Venturi didn't have

19   that information elsewhere somewhere in its system, that --

20             MR. TURNER:  Well, that's --

21             THE COURT:  -- that strikes me as implausible, but

22   maybe your proof will show that that's the case.

23             MR. TURNER:  We believe it will.  Thank you, Your

24   Honor.

25             THE COURT:  Very good.  Ms. Dobrosky, do you want

Page 22

 1    to --

 2              MS. DOBROSKY:  I do, Your Honor.

 3              THE COURT:  -- tell me anything?

 4              MS. DOBROSKY:  I do.  If I could just remain here,

 5    that would be great.

 6              THE COURT:  Sure.

 7              MS. DOBROSKY:  Thank you.

 8              THE COURT:  Sure.

 9              MS. DOBROSKY:  If I could make just one thing clear,

10    Your Honor, my clients are not looking to derail the company

11    and put innocent people out of work.  To the contrary, they

12    have operated in such a way to ensure that they are actually

13    abiding by the noncompete agreements that they each signed

14    with Venturi.  Their -- the corporate entities that they are

15    accused with being involved with do not compete directly with

16    Venturi.

17              The primary business of Venturi, when my clients

18    first started working there in 2000 with Mr. Heffelfinger and

19    2005 with Mr. Stryjak, the primary business of Venturi was

20    carpet cleaning in apartment buildings.  In fact, at that

21    time, the tag line that Venturi used for its marketing

22    purposes was "Venturi Clean, cleaning carpets right, the

23    healthy way."  When my client, Mr. Heffelfinger, was employed

24    by Venturi in March of 2000, he was first employed as a

25    carpet-cleaning technician.  When Mr. Stryjak was employed by

1    Venturi in October 2005, he was employed as a carpet-cleaning

2    technician.  Both gentlemen did, at some point, work together.

3    The business of Venturi was, during their employment, was,

4    let's say, ninety-nine percent apartment building focused.

5    Now, I -- if I can -- and I can tell you that by reference to

6    three different places.

7            I can pinpoint three places to show that Venturi's

8    business was carpet cleaning in the apartment industry, or the

9    multifamily indus -- multihousing industry.  Number one, in

10   the noncompete agreements in this case, there's three of them:

11   one for Mr. Heffelfinger and there's two for Mr. Stryjak.

12   Each of the three agreements contain the exact same recital,

13   and the recital is that -- it's in the first paragraph on the

14   first page of the document -- it's that "employer operates a

15   cleaning business substantially concerned with cleaning

16   carpets in apartments in apartment buildings for apartment

17   buildings or apartment complex management".  Obviously,

18   there's two references to the carpet cleaning in that

19   provision and there's four mentions of apartments.

20           Now, you may say, well, why is that relevant?  Well,

21   my clients don't have any intention of focusing their current

22   or future business endeavors in apartment buildings.  They are

23   planning to solicit private homes and commercial businesses,

24   and they're looking to get into the insurance industry.

25           THE COURT:  You're now talking about the future.

1          MS. DOBROSKY:  Well, currently --

2          THE COURT:  The complaint talks about the past.

3          MS. DOBROSKY:  Okay.  Well, the covenant not to

4   compete is for a period of twenty-four months from the date of

5   their termination.  And my focus is on the application.  I

6   understand what Your Honor's saying, as far as the past.  But

7   my clients' con -- with regard to the past, my clients'

8   contention is they did not directly compete with Venturi in

9   any of their business ventures, and I'm going to go through

10  those -- each of those.

11         Number one, the first one, is the defendant, Summit

12  Restoration.  That is a company that was formed in 2006.  The

13  company was formed when a colleague of Mr. Heffelfinger and

14  Mr. Stryjak's had a construction business that was faltering,

15  and they agreed to merge together.  The intention with the

16  formation of that defendant, Summit Restoration, was that each

17  gentleman would own one-third of the company.  Now, initially,

18  the company was only put into the name of Mr. Heffelfinger and

19  Mr. Stryjak because Charles Beaudot (sic), who is the third

20  gentleman, had some credit issues.  Earlier this year, the

21  company was transferred out of the names of Mr. Heffelfinger

22  and Mr. Stryjak and put into the name of Mr. Beaudot.  That

23  company did outside sales for apartments.  That company -- I'm

24  sorry, Summit did construction.  They did not clean carpets.

25  They did construction; they also provided references to

Page 25

1    painting and janitorial services and carpet cleaning for

2    apartments.

3              THE COURT:  Ms. Dobrosky, let me interrupt you for

4    one second.

5              MS. DOBROSKY:  Sure.

6              THE COURT:  You're talking about various activities

7    that, I take it, you would assert are outside the framework of

8    the covenant.  Tell me about one paragraph in the complaint --

9              MS. DOBROSKY:  Sure.

10             THE COURT:  -- which I'd like to know whether your

11   clients will contest.

12             MS. DOBROSKY:  Okay.

13             THE COURT:  Paragraph 48 on page 11 says "For a

14   period of nearly two years, Venturi acted as a subcontractor

15   for Summit providing services at costs of approximately 11,000

16   dollars.  On information and belief, Summit charged customers

17   substantially more than 11,000 dollars for the work that

18   Venturi performed.  These individual defendants unilaterally

19   and secretly kept these additional profits."

20             MS. DOBROSKY:  Your Honor, the answer to that

21   question is yes and no.  And what I'd like to do is if I can

22   have -- most of the provisions of this complaint and the

23   business relationships that are discussed and the outside

24   information that I've learned to figure out what's going on

25   here is I think, if I can just have Mr. Heffelfinger just

Page 26

1    explain his response to that one paragraph, I think he will do

2    it better justice than I will.

3              THE COURT:  Well, I don't -- until we have him on the

4    witness stand under oath, I don't --

5              MS. DOBROSKY:  Well, he's willing to do that now,

6    under oath.  But the answer to your question is yes and no

7    because it's a little more complicated than just a blanket

8    denial or a blanket admission.  And I know that doesn't help.

9              THE COURT:  Well, I will ask Mr. Turner whether he

10   would mind if Mr. Heffelfinger, being placed under oath at

11   this point, is going to respond to my question.  If you don't

12   wish to proceed in that unusual fashion, Mr. Turner --

13             MR. TURNER:  I do not, Your Honor.

14             THE COURT:  -- I will say no.

15             MR. TURNER:  That's highly irregular.

16             THE COURT:  Pardon?

17             MR. TURNER:  I do not, Your Honor.  That's highly

18   irregular.

19             THE COURT:  All right, irregular I will grant you.

20             MS. DOBROSKY:  It is, Your Honor; I agree.

21             THE COURT:  Whether it's highly or not, I don't know.

22   But plaintiff thinks, I take it, that it would be better to

23   wait until the presentation of testimony in an orderly

24   fashion.  So I will understand that the answer to my question

25   is yes and no, and you have no amplification of that, do you?

 1              MS. DOBROSKY:  I do, Your Honor.  I'm just -- if I

 2      could just have one moment, I'm just -- Mr. Heffelfinger and I

 3      discussed a great number of things, and I'm -- I just want to

 4      make sure that the response I make to Your Honor's question is

 5      accurate.

 6              THE COURT:  All right.

 7              MS. DOBROSKY:  So if I could just have one moment.  I

 8      apologize.

 9         (Pause)

10              MR. TURNER:  Your Honor, if I may?

11              THE COURT:  Yes.

12              MR. TURNER:  We -- the plaintiff is more than willing

13      to agree to expedite a discovery so that we can, if we're

14      going to go the route of testimony, have it conducted in an

15      orderly fashion, if that's the issue here, from the standpoint

16      of moving this forward to get a response, here.  We believe

17      we've put forward more than enough information and facts to

18      warrant an injunction here.  But --

19              THE COURT:  I'm not sure what the thrust of that is,

20      Mr. Turner.  Are you --

21              MR. TURNER:  Well, the thrust is --

22              THE COURT:  I've already said that if you disagree,

23      we're not going to proceed with Mr. Heffelfinger's view until

24      he appears as a witness.  But therefore, we won't interrupt --

25      interject into Ms. Dobrosky's statement the sworn

1    supplementary statement of Mr. Heffelfinger, whatever it would

2    be.  Are you changing your position, Mr. Turner?

3              MR. TURNER:  No, Your Honor.

4              THE COURT:  Oh, all right.

5              MS. DOBROSKY:  Your Honor, if I can just -- if I

6    could just respond, what I -- I'm not sure I conveyed before

7    is that there was, at some point, a relationship between

8    Summit and Venturi.  Mr. Heffelfinger and Mr. Stryjak operated

9    the business known as Summit Construction prior -- for a

10   significant period of time prior to that company having any

11   involvement with Venturi.  It was actually after the company

12   existed -- and that's the Summit company existed for a while,

13   and what these gentlemen did is they -- Summit was in the

14   business of identifying contractors to do construction,

15   painting, any carpet-cleaning services for apartment

16   buildings.  What these gentlemen did with regard to the

17   relationship between Summit and Venturi is they actually

18   contracted Summit so that Venturi would provide services.  So

19   they marketed Venturi as a carpet cleaner through Summit.

20             I apologize, Your Honor.  I'm being told by my client

21   that I'm misconveying this.  If I could have just one moment.

22        (Pause)

23             THE COURT:  Well, Ms. Dobrosky, I don't want you put

24   in the position of undertaking to characterize the facts when

25   you're still really uncertain --

1              MS. DOBROSKY:  No, I'm not.

2              THE COURT:  -- of them, and I'm perfectly willing to

3     regard this as a question that I've placed and it's unanswered

4     and it will -- and your clients' answer will develop during

5     the testimony.  I'm perfectly happy to wait for an answer.

6              MS. DOBROSKY:  Thank you, Your Honor.  If I could

7     just give you just a little bit more of a summary as part of

8     my -- as part of my statement in response to Mr. Turner's

9     statement.

10             Just lastly, with regard to Summit, Summit actually

11    would utilize the services of Venturi for carpet-cleaning

12    services.  Summit did not clean carpets.  They would give

13    business to Venturi for cleaning carpets in apartment

14    buildings -- or, in private -- I'm sorry, in private homes.

15             THE COURT:  This was when -- and Mr. Heffelfinger and

16    Mr. Stryjak were in control of Summit at that time?

17             MS. DOBROSKY:  It was, Your Honor.  It was from 2006

18    through 2010 and earlier this year, like I said, the business

19    was transferred to the name of Charles Beaudot.  And he is the

20    person who managed that business, who was the person who took

21    primary responsibility of --

22             THE COURT:  Which "he" was the --

23             MS. DOBROSKY:  Charles Beaudot -- Beaudet --

24             THE COURT:  Throughout this period?

25

1          MS. DOBROSKY:  Throughout this period.

2          THE COURT:  Right, and your --

3          MS. DOBROSKY:  He was the person who managed Summit,

4     who was the primary operator of Summit.

5          THE COURT:  And Stryjak -- Messrs. Stryjak and

6     Heffelfinger had major roles in the company at that point, is

7     that right?

8          MS. DOBROSKY:  They were in the business by name

9     only.  They were not involved in the day-to-day operations.

10    The intention of that business was that their names would be

11    off of it, ultimately, after Charles Beaudet resolved whatever

12    issues he had.  I spoke with Mr. Heffelfinger and Mr.

13    Stryjak's accountant yesterday, and I learned that that

14    business, earlier this year, had indeed been transferred to

15    the name of Charles Beaudet, which was the primary intention

16    of the parties all along.  Their involvement in that company

17    was more so in name than operations.  They were clearly

18    involved; I'm not going to deny that.  But Mr. Beaudet was the

19    one -- it was partially a construction company.  And Mr.

20    Beaudet had a construction company of his own that he operated

21    for many years prior to the incorporation of Summit in 2006.

22          But if I can just address -- there's two other

23    defendants that are named.  One is Dry Air.  If I can just --

24    it's Dry Air Resources.  That is a wholesale rental company

25    for drying equipment.  That company was not in direct

1       competition at any time with the operations of Venturi.

2              In addition, there is another -- the third corporate

3       defendant is Multi-Family Vendor Solutions.  That is an

4       outside sales company, and that's the one that I, personally,

5       was just getting confused with Summit.  Multi-Family Vendor

6       Solutions is a company that sold work for Venturi.  It was an

7       outside sales company.  It was actually --

8              THE COURT:  I'm sorry, you said -- what was the

9       relation to Venturi?

10             MS. DOBROSKY:  It actually sold and promoted business

11      for Venturi.  So Venturi -- if there was a customer that

12      needed carpet cleaning, a service that Venturi would provide,

13      the Multi-Family would refer them that business.  And what I'm

14      trying to say here -- and perhaps I haven't done such a good

15      job of it -- when these gentlemen came on board and got

16      involved with Venturi, it was a carpet-cleaning business.  Mr.

17      Heffelfinger and Mr. Stryjak are the ones that actually

18      expanded their market, their area of doing things, such as

19      drying -- other areas, other than carpet cleaning.  In fact,

20      in 2008, Mr. Heffelfinger and Mr. Stryjak hosted a convention

21      or spoke at a convention for Venturi in Denver, Colorado,

22      where they told other employees of Venturi how to expand the

23      business beyond the carpet-cleaning industry.  And the

24      information I also have which -- let me just back up here.

25             My clients' position is they're willing to abide by

1    the noncompete, and their position is that they have abided by

2    it so far, the noncompete and the nonsolicitation, because

3    they have not done anything to impinge upon Venturi's

4    operations as a carpet-cleaning business for apartment

5    buildings.  I have the brochure -- Mr. Stryjak is a sales --

6    he's a salesperson -- he was a salesperson for Venturi.  As

7    part of his sales, he would carry around this brochure, which

8    I'm going to -- at the appropriate time, I'm going to hand up

9    to Your Honor, and I do have a copy for counsel, which I'm

10   sure he has.  But if you look at this brochure, everything on

11   it talks about apartments and multifamily dwellings.  There's

12   some testimonials in here from individuals who have apartment

13   buildings, and they talk about the fact that Venturi meets

14   their needs with regard to apartment buildings.  My clients

15   maintain that they have not done anything to compete with that

16   market of Venturi.  My clients' contention is that their

17   involvement with private homes and their continued desire to

18   work with private homes is not something that Venturi does or

19   focuses on.  And you can see it by not only the sales

20   brochure.  If you go on their web site, which I did last

21   night, you can see that it's all the multifamily apartment

22   homes.  And the agreement, the actual agreement for my clients

23   talks about carpet cleaning in apartment buildings.

24          And as Your Honor's aware, and it's our position,

25   that this document should be strictly construed within the

Page 33

1    four corners of it.  It doesn't talk about the things that my

2    clients have done.  My clients contend that with their

3    operations of the other businesses that they were involved

4    with, they did not step on the toes of Venturi.  They did not

5    breach any agreement, and they don't intend to breach any

6    agreement.  Their intention, if permitted, is to continue

7    doing business as a company that does remediation for smoke,

8    flood, and mold for private residences and commercial

9    businesses, and their intention is to work with insurance

10   companies.  That is something that through their course of

11   employment with Venturi that they didn't do; they didn't do

12   that.  And perhaps even through testimony of my clients, it

13   will be even more evident of what I'm stating to Your Honor.

14          But if I can just move on to the property, Mr.

15   Heffelfinger, prior to my representation of him --

16          THE COURT:  Maybe, before you go on --

17          MS. DOBROSKY:  Sure.

18          THE COURT:  -- you will -- I think it's only fair to

19   counsel on both sides for me to explain that paragraph 48,

20   which I understand you will try to develop a fuller answer to

21   when Mr. Heffelfinger is on the stand, that paragraph, to the

22   extent that it's an accurate recital, sounds to me as if it --

23   as it may well describe a form of competition by Summit to the

24   extent that the individual defendants were principals of it or

25   had a significant role in it, represented by activity by

Page 34

1    Summit which could well be characterized as competitive with

2    Venturi.  That -- because there's no description of what

3    services were subcontracted, that, of course, still leaves

4    open to defendants the argument which you're making, Ms.

5    Dobrosky, that the covenants should be regarded as limited to,

6    I guess, to cleaning apartments -- cleaning carpets, which may

7    be a valid line of argument.

8         MS. DOBROSKY:  Your Honor, respectfully, if I could

9    just add something.  With paragraph 48, if I could just make

10   it clear that Summit was only providing work in private homes,

11   not apartments, and that is detailed in the Plaintiff's

12   Exhibit G.  There's an invoice that goes through -- it's

13   entitled "Summit Restoration", Exhibit G.  And this is a list

14   of multiple invoices for work that's --

15        THE COURT:  Where are we looking now?  I'm sorry.

16        MS. DOBROSKY:  I'm sorry, Your Honor.  It's Exhibit

17   G.

18        THE COURT:  G?  Exhibit G.  And where am I to look on

19   Exhibit G?

20        MS. DOBROSKY:  Your Honor, this exhibit is a detailed

21   list of services performed by Venturi at the request of Summit

22   Restoration.  And what this demonstrates is that it was --

23   these are all private homes --

24        THE COURT:  But where am I to look?

25        MS. DOBROSKY:  Oh, all of the -- just the -- just

1    these are all of the invoices.  It's the dates; there's -- the

2    first invoice date is 12/25/2008.

3              THE COURT:  Let's see.  Yes.

4              MS. DOBROSKY:  And if I can point out, if Your Honor

5    wouldn't mind going down to the bottom of that page, on 10/7

6    of 2009, it's detailed in there, it's a four-bedroom town-

7    home, carpet cleaned.  And this is -- I refer Your Honor to

8    that, where it says four-bedroom town-home carpet clean

9    because this demonstrates that Summit Restoration did work

10   only in private homes, not apartment buildings.  And it also

11   demonstrates that it was actually Venturi that did the carpet

12   cleaning.  As I told Your Honor, the recital in the agreement

13   with Venturi and Mr. Stryjak and Mr. Heffelfinger is that the

14   work performed by them will be carpet cleaning in apartment

15   buildings.  This invoice actually shows that Summit wasn't

16   doing apartment buildings, and that it shows they weren't

17   doing carpet cleaning.  So then Summit was not in competition

18   or operating in competition in any way with Venturi.

19             THE COURT:  Well --

20             MS. DOBROSKY:  There's also -- on the top of Exhibit

21   G --

22             THE COURT:  Could you hold on just one second?

23             MS. DOBROSKY:  Sure.

24             THE COURT:  You identified an invoice of 10/5 --

25   10/7/2009.  I think that's the one you referred to.

Page 36

1          MS. DOBROSKY:  It is, Your Honor.

2          THE COURT:  A four-bedroom town-home carpet clean.

3          MS. DOBROSKY:  Occupied.

4          THE COURT:  Now, do I understand this describes a

5   service performed by Summit?

6          MS. DOBROSKY:  Correct, Your Honor.

7          THE COURT:  And it does not describe a service which

8   the defendants arranged to have Venturi perform as, in the

9   language of the complaint, a subcontractor?

10          MS. DOBROSKY:  That's correct, Your Honor, and it's

11   because Venturi would do the carpet cleaning, Summit did not

12   do carpet cleaning.

13          THE COURT:  Summit did not do the carpet cleaning?

14          MS. DOBROSKY:  That's correct.  So they would --

15          THE COURT:  Well, why does it -- I guess I -- then,

16   I'm missing your point.

17          MS. DOBROSKY:  They would --

18          THE COURT:  Say four-bedroom town-home, carpet clean.

19   What --

20          MS. DOBROSKY:  These are the invoices sent from

21   Venturi to Summit for work that Summit subcontracted to

22   Venturi.

23          THE COURT:  Um-hum.

24          MS. DOBROSKY:  Because Summit -- if Summit needed a

25   carpet cleaned, they don't clean carpets, so they would

Page 37

1    subcontract that out to Venturi.  And this shows -- this is

2    just an itemization.  It's a Venturi sales itemization from

3    January 1st, 2007 through August 31st of 2010, and it shows

4    money that was paid to Venturi -- this is money that Summit

5    paid to Venturi for services --

6              THE COURT:  I see.

7              MS. DOBROSKY:  -- that were performed by Venturi at

8    the request of Summit.

9              THE COURT:  Is it your -- will it be your clients'

10   position -- I'll put the question to you now and you can think

11   about the answer when you go ahead and present your case.  Is

12   it part of your clients' position that when, for example, the

13   10/7/2009 carpet cleaning that was done by Venturi for Summit,

14   would it be your position that Venturi -- apart from Mr.

15   Heffelfinger and Mr. Stryjak -- that Venturi knew that Mr.

16   Stryjak and Mr. Heffelfinger were -- had a -- played a

17   significant role in Summit?

18             MS. DOBROSKY:  No.

19             THE COURT:  No, they did not?

20             MS. DOBROSKY:  They did not.  And if I could just

21   add, the pricing that was paid -- the amounts that were paid

22   by Venturi, that was Venturi pricing.

23             THE COURT:  That was --

24             MS. DOBROSKY:  That was Venturi's pricing.  It was

25   the rates that they charged.

1          THE COURT:  Part -- I think you appreciate that part

2     of the complaint -- maybe it can't be sustained but part of

3     the complaint is that Mr. Stryjak and Mr. Heffelfinger, in

4     exercise of their responsibilities to Venturi, were in a

5     position to determine what price Venturi charged.

6          MS. DOBROSKY:  I understand that, Your Honor, and

7     it's my understanding that the prices are set by Venturi and

8     they're set by someone other -- initially set by someone other

9     than my clients.  There's a dispatch department at Venturi

10    that will set up the base prices.

11         THE COURT:  You say initially?

12         MS. DOBROSKY:  That's correct.

13         THE COURT:  And what happens secondarily?

14         MS. DOBROSKY:  The --

15         THE COURT:  Are you saying that Mr. Heffelfinger and

16    Mr. Stryjak had no role whatever in determining what the price

17    would be?

18         MS. DOBROSKY:  Okay, what would happen is, for

19    instance, at Exhibit G, a technician from Venturi would go out

20    to these locations.  It was not Mr. Stryjak and it was not Mr.

21    Heffelfinger that would go out on these jobs.  The technician

22    would go out -- again, not these gentlemen -- look at the

23    area, go back to Venturi with the dimensions and the work that

24    needed to be done, and then Venturi dispatch would set up the

25    pricing.  My clients were not involved in that pricing.

1         THE COURT:  Well, obviously, there's a conflict of

2    fact between the plaintiff and your clients with respect to

3    that.  The information as to the area to be cleaned and so

4    forth, which you say was determined for Venturi by persons

5    other than the individual defendants --

6         MS. DOBROSKY:  That's correct, Your Honor.

7         THE COURT:  -- that was information which, I take it,

8    plaintiff would contend was already known or knowable to Mr.

9    Heffelfinger and Mr. Stryjak because of their role in Summit.

10         MS. DOBROSKY:  Correct, Your Honor, but they didn't

11    do anything to inflate or -- they didn't do anything to change

12    that pricing.

13         THE COURT:  Well --

14         MS. DOBROSKY:  They were simply referring business in

15    private homes and commercial businesses to Venturi.  So in

16    this regard, they were actually helping Venturi to make a

17    profit in areas that Venturi didn't usually operate.

18         THE COURT:  I see.  Your clients -- I take it from

19    what your statement is that your clients would have known,

20    perhaps participated in determining the price that Summit was

21    charging to the proprietor of the four-bedroom town-home.

22         MS. DOBROSKY:  Your Honor, for half of these

23    invoices, Mr. Heffelfinger would do the invoicing.  But for

24    the other half, there was someone other than Mr. Heffelfinger

25    or Mr. Stryjak that would do the pricing -- or, that did half

1    of the pricing on this list.

2              THE COURT:  For Summit?

3              MS. DOBROSKY:  Exactly, yes.

4              THE COURT:  All right.

5              MS. DOBROSKY:  And there's obviously similarities in

6    the pricing that was done by Mr. Heffelfinger as well as the

7    other individual that was not Mr. Heffelfinger or Mr. Stryjak.

8    And the average invoice was 310 dollars --

9              THE COURT:  All right.

10             MS. DOBROSKY:  -- which would be three times higher

11   than the rest of the customers from Venturi.

12             THE COURT:  All right.  Well, I've been probably

13   unfairly, Ms. Dobrosky, asking you questions that can't really

14   be answered in some comprehensive sense until one or both of

15   your individual defendants is on the witness stand.  So I

16   don't want to pursue questioning of that kind.  I'd be glad to

17   have you complete whatever preliminary statement you wish to

18   make before we proceed to testimony.

19             MS. DOBROSKY:  Thank you, Your Honor.  And I do

20   apologize for not having more of that information on the tip

21   of my tongue.  Had it been a little longer than my involvement

22   of forty-eight hours, I would like to think I would have.  But

23   I'm working on it.

24             I hope I have explained Summit to Your Honor's

25   satisfaction, at least as far as how it's our position that

Page 41

1    the involvement by my clients with Summit did not breach any

2    of their agreements with Venturi.

3            And if I could just -- I don't know if I addressed

4    Dry Air.  Dry Air is a company that was involved in the

5    wholesale rental for drying equipment.  Again, it was not a

6    business that did carpet cleaning; it is not a business that

7    in anyway directly competed with Venturi.

8            Also, Multi-Family, I believe I did address.  Again,

9    this did not compete with Venturi in any way.

10           And if I could just --

11           THE COURT:  Excuse me.  You said Dry Air was engaged

12   in the wholesale rental of equipment?

13           MS. DOBROSKY:  Wholesale rental for drying equipment,

14   equipment that would be used to dry out anything that had been

15   damaged by flood.

16           THE COURT:  And such equipment -- will the testimony

17   be that such equipment was rented by Dry Air to Venturi?

18           MS. DOBROSKY:  Yes, it will.

19           THE COURT:  Well, well, that -- all right.  All

20   right, okay.

21           MS. DOBROSKY:  Your Honor, I'm hard-pressed to

22   believe that Venturi can actually show that my clients have

23   damaged them monetarily in any way.  In fact, I think the

24   evidence is going to show that my clients actually increased

25   profits for Venturi and made them more money and more profits.

1    I think that'll be more clear when my clients who have a
2    greater understanding of those -- of the operations of each
3    business, when they testify, I think that will be more clear.
4    If I can just -- and I'll let them do that in their testimony.
5         If I can just address the property, there was a
6    statement by Mr. Turner about the computer removed from
7    Venturi.  Your Honor, my client does admit that he did remove
8    the computer.  However, as Your Honor -- as Your Honor
9    correctly surmised, while that computer was at Venturi, it was
10   actually hooked up to a server that corporate or anybody at
11   Venturi would have access to, and that's the reason why my
12   client -- and he does admit, he did remove -- he did remove
13   personal items from the computer.  He removed documents
14   pertaining to his personal credit cards that had nothing to do
15   with any charges by any of the corporate defendants or the
16   corporate plaintiff.  He removed personal pictures, family
17   photos, and he also removed some information for his limited
18   investment accounts.  He has the computer here today with
19   everything except for that, but he has advised me that he is
20   willing to let counsel for Venturi look at the information
21   that he did remove so they can see that it was of a personal
22   nature and it has absolutely no bearing whatsoever to do with
23   his involvement in an employment relationship with Venturi.
24        There's also allegations that my clients removed
25   other property from Venturi.  They have brought with them

Page 43

1    today two moisture meters.  They are, along with the computer

2    and along with the client list, they are the only four items

3    of property that my clients have from Venturi.  I understand

4    there may be an allegation that the equipment that is used by

5    the corporate defendant that is identified as Dry Air

6    Resources might be fans or items from Venturi.  My clients do

7    have invoices to show that all of those fans and anything they

8    have there, they purchased.  They are not using any of

9    Venturi's property --

10            THE COURT:  They being corporate defendants or

11    individual defendants or --

12            MS. DOBROSKY:  It being the individual defendants,

13    Mr. Heffelfinger and Mr. Stryjak, as well as the corporate

14    defendant that is identified as Dry Air Resources.

15            THE COURT:  Oh, I see.  All right.

16            MS. DOBROSKY:  They don't have any other property and

17    they did not use any of Venturi's property to engage in their

18    own business.  With regard to the client list that my client

19    had -- and he didn't take it from Venturi with any evil

20    motives; it was something that, as a sales representative,

21    that he would carry with him.  I have it here to return to

22    plaintiff's counsel.  My client didn't copy it.  I didn't even

23    have an opportunity to copy it.  So my clients are prepared to

24    return all of the property that they have that was removed or

25    that they took with them from Venturi.  They don't have

1    anything else.

2            And Your Honor, as far as my closing statement,

3    that's all I have, just with a promise that my clients will

4    explain the questions that Your Honor did ask during the

5    statement.

6            THE COURT:  All right.  Well, we now completed

7    opening statements.  The time is now 12:38.  It may be that

8    counsel and the parties would think that this would be a

9    useful time for a luncheon recess.  I don't have a strong

10   feeling one way or the other as to whether we recess now or

11   make an initial beginning on testimony.  But we obviously

12   couldn't get very far on testimony without pushing the lunch

13   hour without reason.  So unless counsel have something of a

14   different nature to suggest, I would think we probably ought

15   to recess for lunch now.

16           I will say that whenever we take a luncheon recess, I

17   would hope and expect that the parties will continue to take

18   advantage of our not proceeding directly into testimony to

19   pursue their conversations about settlement.  It seemed to me

20   that from the tone of the responses that I've received so far,

21   if not for the direct factual recital, that the parties are

22   not irretrievably far apart and if it be the case that the

23   defendants conclude that the -- without surrendering their

24   position conclude that defending the merits may be difficult

25   and may have a significant risk of nonprevailing, and if the

1   plaintiff, on the other hand, is led to consider that carrying

2   forward, rather than settling now, simply because the

3   plaintiff would like to retrieve its legal expenses, so far,

4   the plaintiff may wish to consider that so far, its lawyer

5   costs have been, presumably, not extravagant -- the

6   preparation of initial pleadings, to be sure -- but that those

7   expenses will become more substantial if we go forward with a

8   hearing on a preliminary injunction and, perhaps, after that,

9   a permanent injunction and possible appeals.  And it may be

10  that the plaintiff may have reason to think that collecting

11  any very substantial amount from the individual defendants or

12  the corporate defendants as has been described, recovering any

13  substantial amount of dollars may not be so easy.  It's one

14  thing to have a judgment; it's something else to collect on

15  it.

16          So with that modest and nondirective recommendation s

17  to how you spend your lunch hour, I think we will recess from

18  now until 2 o'clock.  I'm giving you more than an hour so that

19  you'll have continuing time to talk.  I will advise parties

20  that if it becomes necessary for us to proceed, I will have a

21  limited time this afternoon, possibly as much as an hour and a

22  half, and I will not be here tomorrow.  We would be -- on the

23  assumption that we would not have completed testimony today,

24  it would mean we'd be going over until next week to find a

25  time to complete our hearing.

1          So I will expect you back at 2 o'clock, except that

2     if your lunch conversations suggest that you need more time

3     than an hour and a quarter, that will be freely given.  So

4     I'll see you at 2, but I'll happily -- I'll be glad to have

5     you make it later.

6               MS. DOBROSKY:  Thank you, Your Honor.

7               MR. TURNER:  Thank you, Your Honor.

8          (Recess from 12:43 p.m. until 2:41 p.m.)

9               THE COURT:  Please, please, sit down.

10          The record will show that this afternoon at 2:43, we

11     are suspending this hearing and we will resume, if need be,

12     next week, next Tuesday afternoon, that's September 14th, at 2

13     o'clock.  But the parties have agreed to go and consult with

14     Judge Angell in the meantime and perhaps, hopefully, that will

15     obviate further proceedings.  And I think that probably covers

16     what needs to be said this afternoon.

17          Anything further from counsel?

18               MR. TURNER:  Maybe a note regarding maintaining the

19     status quo by the parties?

20               THE COURT:  I'm sorry?

21               MR. TURNER:  Maybe a comment on the record regarding

22     maintaining -- the parties maintaining the status quo between

23     them, I guess.

24               THE COURT:  Oh, surely, um-hum, yes, of course.  I --

25     that should be said.  It is the strong expectation to a level

1    of insistence that nothing be done by the parties, the

2    plaintiff on the one hand, the defendants on the other, to

3    disturb the status quo as it exists today.  And so I think

4    that covers it, except for my requesting counsel for the

5    plaintiff and also counsel for the defendants to convey to

6    their absent colleagues who are on the docket, but I take it,

7    not here today due to the holidays, tell them we miss them and

8    we hope it won't be necessary for them or for the rest of you

9    to pursue matters.

10           I should say -- I don't know if I say this for the

11   record or not, but having referred to the holidays, this being

12   Rosh HaShana, the question arises why is Pollak here.  Why

13   isn't -- why am I not absenting myself for the holidays?  And

14   the answer seems to be I'm a very bad Jew; I'm not a

15   conforming one.  And the excuse for coming to work is that I'm

16   slower than my colleagues and need to keep all the time I can.

17   But I don't think that whole ingredient is part of -- is going

18   to be an essential part of your conversations with Judge

19   Angell.

20           I wish you well.  And let's hope things can be worked

21   out.  I do want to thank counsel on both sides for your

22   thoughtful concern and participation.  It's very gratifying.

23   So we're in recess.

24           MS. DOBROSKY:  Thank you, as well, Your Honor.

25           MR. TURNER:  Thank you, Your Honor.

1          MR. SLOAN:  Thank you, Your Honor.

2                    (Court is adjourned)

3                     *  *  *  *  *

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1           C E R T I F I C A T I O N

2

3          I, Dena Page, the court approved transcriber, do

4     hereby certify the foregoing is a true and correct transcript

5     from the official electronic sound recording of the

6     proceedings in the above-entitled matter.

7

8

9                                              9/12/2010

10    _____        _____

11    DENA PAGE                                DATE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## A

**Abate** 17:14
**abide** 31:25
**abided** 32:1
**abiding** 22:13
**ability** 18:10 19:13
**able** 3:24 6:17 21:9
**above-entitled** 49:6
**absent** 47:6
**absenting** 47:13
**absolutely** 42:22
**access** 20:16 42:11
**accountant** 30:13
**accounts** 42:18
**accurate** 27:5
  33:22
**accurately** 21:14
**accused** 22:15
**acted** 25:14
**activities** 17:11
  25:6
**activity** 33:25
**actual** 32:22
**add** 34:9 37:21
**addition** 31:2
**additional** 25:19
**address** 4:1 10:9
  11:8 15:8 30:22
  41:8 42:5
**addressed** 41:3
**adhere** 6:1
**adjourned** 48:2
**admission** 15:20
  26:8
**admit** 15:21 42:7
  42:12
**advantage** 44:18
**advise** 7:8 45:19
**advised** 42:19
**affiliated** 13:5
  15:21
**afternoon** 5:10
  45:21 46:10,12,16
**agree** 26:20 27:13
**agreed** 18:19 24:15
  46:13
**agreement** 6:24 7:2

10:20 13:9 17:12
  18:1,19 19:3
  32:22,22 33:5,6
  35:12
**agreements** 18:9
  19:5,6,8 22:13
  23:10,12 41:2
**ahead** 3:25 37:11
**Air** 30:23,24 41:4,4
  41:11,17 43:5,14
**AL** 1:5
**allegation** 43:4
**allegations** 42:24
**alter** 20:21
**amount** 20:12
  21:11 45:11,13
**amounts** 37:21
**amplification**
  26:25
**analogous** 14:21
**Angell** 46:14 47:19
**answer** 25:20 26:6
  26:24 29:4,5
  33:20 37:11 47:14
**answered** 40:14
**anybody** 42:10
**anyway** 41:7
**apart** 37:14 44:22
**apartment** 10:6,8
  10:15 22:20 23:4
  23:8,16,16,17,22
  28:15 29:13 32:4
  32:12,14,21,23
  35:10,14,16
**apartments** 23:16
  23:19 24:23 25:2
  32:11 34:6,11
**apologize** 27:8
  28:20 40:20
**apparent** 8:18
**appeals** 45:9
**appearance** 4:2
**APPEARANCES**
  1:10
**appeared** 8:8
**appears** 14:11 16:1
  16:1,4,20 17:9

27:24
**application** 8:12
  24:5
**applied** 14:21
**applies** 13:24 14:4
  14:14
**apply** 13:17,22
  19:16
**appreciate** 38:1
**appropriate** 32:8
**approved** 49:3
**approximately**
  25:15
**area** 18:15 19:14
  19:15 31:18 38:23
  39:3
**areas** 5:21 14:24
  19:15 31:19 39:17
**argument** 4:20
  34:4,7
**arises** 47:12
**arm** 9:13
**arranged** 36:8
**array** 11:5
**arrived** 7:2 8:9
**asked** 20:17
**asking** 6:11 40:13
**aspect** 18:7
**aspects** 17:8
**assert** 25:7
**assumption** 45:23
**Atlantic** 1:23
**attached** 15:11
**attempt** 19:20
**attempting** 4:5
**ATTORNEY** 1:14
**attorneys** 6:12
**August** 37:3
**authored** 15:10
**average** 40:8
**avoiding** 5:2
**aware** 19:23 21:11
  21:12 32:24
**a.m** 8:1,1

## B

**back** 7:7 18:21

20:22 31:24 38:23
  46:1
**bad** 47:14
**balancing** 18:25
**Baltimore** 19:15
**banking** 19:17
**base** 9:24 10:19
  17:24 38:10
**basic** 17:13
**Basically** 17:13
**bearing** 42:22
**Beaudet** 29:23
  30:11,15,18,20
**Beaudot** 24:19,22
  29:19,23
**beg** 12:1
**beginning** 44:11
**belief** 25:16
**believe** 11:10,22
  12:6 14:18 16:16
  20:11 21:23 27:16
  41:8,22
**better** 12:25 26:2
  26:22
**beyond** 7:6 11:5
  31:23
**billing** 21:12
**bit** 29:7
**blanket** 26:7,8
**board** 31:15
**BOCKIUS** 1:12
**bottom** 35:5
**breach** 33:5,5 41:1
**briefly** 13:14
**bring** 10:14
**Broad** 1:15
**brochure** 32:5,7,10
  32:20
**brought** 10:5 42:25
**build** 19:18
**building** 1:15 10:16
  23:4
**buildings** 22:20
  23:16,17,22 28:16
  29:14 32:5,13,14
  32:23 35:10,15,16
**built** 15:24

**business** 9:14,18
  10:2,10,12,13,25
  11:11,19 18:8
  19:10,13 22:17,19
  23:3,8,15,22 24:9
  24:14 25:23 28:9
  28:14 29:13,18,20
  30:8,10,14 31:10
  31:13,16,23 32:4
  33:7 39:14 41:6,6
  42:3 43:18
**businesses** 4:18
  23:23 33:3,9
  39:15

## C

**C** 1:14 49:1,1
**call** 10:13 11:16
**cards** 42:14
**care** 10:14
**carpet** 22:20 23:8
  23:18 25:1 28:19
  31:12,19 32:23
  35:7,8,11,14,17
  36:2,11,12,13,18
  36:25 37:13 41:6
**carpets** 9:16 10:9
  22:22 23:16 24:24
  29:12,13 34:6
  36:25
**carpet-cleaning**
  22:25 23:1 28:15
  29:11 31:16,23
  32:4
**carry** 32:7 43:21
**carrying** 45:1
**case** 6:21 8:9,12
  10:10 21:22 23:10
  37:11 44:22
**caused** 10:8
**CEO** 16:5,15
**certain** 11:3 21:9
**Certainly** 8:19
**certify** 49:4
**CFO** 17:14
**change** 39:11
**changes** 12:4

changing 28:2
characterize 28:24
characterized 34:1
charged 25:16
    37:25 38:5
charges 42:15
charging 39:21
Charles 24:19
    29:19,23 30:11,15
choose 9:6
chronologic 16:10
chronologically
    16:10
claim 21:17
claims 8:9 11:16
clean 22:22 24:24
    29:12 35:8 36:2
    36:18,25
cleaned 35:7 36:25
    39:3
cleaner 28:19
cleaning 9:15 17:20
    22:20,22 23:8,15
    23:15,18 25:1
    29:13 31:12,19
    32:23 34:6,6
    35:12,14,17 36:11
    36:12,13 37:13
    41:6
clear 6:9 19:25
    22:9 34:10 42:1,3
clearly 19:23 30:17
CLERK 7:12,14,17
client 4:15 22:23
    28:20 42:7,12
    43:2,18,18,22
clients 4:5,17 6:22
    22:10,17 23:21
    24:7,7 25:11 29:4
    31:25 32:14,16,22
    33:2,2,12 37:9,12
    38:9,25 39:2,18
    39:19 41:1,22,24
    42:1,24 43:3,6,23
    44:3
closing 44:2
colleague 24:13

colleagues 47:6,16
collect 45:14
collecting 45:10
Colorado 31:21
come 9:2 18:10
comes 16:9 17:20
comfortable 9:8
coming 3:3 47:15
comment 46:21
commercial 23:23
    33:8 39:15
communication
    17:8
companies 15:22
    33:10
company 1:23 11:9
    14:8,15,16 15:19
    16:5,18 17:14
    18:5,5,14,16
    20:15 21:10,12
    22:10 24:12,13,17
    24:18,21,23,23
    28:10,11,12 30:6
    30:16,19,20,24,25
    31:4,6,7 33:7 41:4
company's 18:10
compete 6:25 10:21
    22:15 24:4,8
    32:15 41:9
competed 15:20,22
    41:7
competition 31:1
    33:23 35:17,18
competitive 18:8
    34:1
complaint 12:8
    15:11 20:9 24:2
    25:8,22 36:9 38:2
    38:3
complete 5:4 40:17
    45:25
completed 44:6
    45:23
complex 10:8 23:17
complex-type 10:6
complicated 26:7
comprehensive

15:6 40:14
compromise 7:3
computer 16:18,19
    20:9,10,12,16,20
    20:25,25 21:3,10
    21:10,13,16 42:6
    42:8,9,13,18 43:1
con 24:7
concern 47:22
concerned 23:15
conclude 44:23,24
conduct 19:13
conducted 9:17
    27:14
conducting 19:10
conference 7:11
confidential 10:3
    10:17 11:2 14:15
    17:18 18:12 20:12
conflict 39:1
conforming 47:15
confused 31:5
consider 45:1,4
consideration 19:2
construction 24:14
    24:24,25 28:9,14
    30:19,20
construed 32:25
consult 46:13
contact 14:9
contacting 14:9
contain 23:12
contained 13:11
containing 10:20
    18:1
contains 13:9
contemplate 8:17
contend 33:2 39:8
contention 24:8
    32:16
contest 25:11
continue 8:17 33:6
    44:17
continued 32:17
continuing 45:19
contracted 28:18
contracting 14:8

contractors 28:14
contracts 10:12
contrary 17:12,12
    22:11
control 29:16
convention 31:20
    31:21
conversation 4:25
conversations 3:19
    4:4,12 5:10 8:3
    44:19 46:2 47:18
convey 11:7 47:5
conveyed 28:6
copy 32:9 43:22,23
corners 33:1
cornerstone 10:2
corollary 21:18
corporate 4:8,9
    12:3 13:2,3 15:2
    22:14 31:2 42:10
    42:15,16 43:5,10
    43:13 45:12
corporations 8:21
correct 6:13 12:10
    16:11 18:22 36:6
    36:10,14 38:12
    39:6,10 49:4
correctly 42:9
costs 5:25 6:7,8 7:3
    7:5 25:15 45:5
counsel 3:18 8:22
    9:6 11:16 32:9
    33:19 42:20 43:22
    44:8,13 46:17
    47:4,5,21
counties 13:20,20
    13:21,23 14:25
    19:8
couple 11:19
course 11:16,17
    33:10 34:3 46:24
court 1:1,23 3:1,3,7
    3:9,14,16,17,18
    3:24 4:20,22,24
    5:2,13,16,22 6:5,7
    6:11,14 7:13,15
    7:18,20,22,24 8:2

8:7 9:4,9,11 11:13
    11:23 12:1,5,7,13
    12:16,20,24 15:6
    16:2,7,9,12,22,24
    17:1,6 18:21,23
    20:22,24 21:5,16
    21:21,25 22:3,6,8
    23:25 24:2 25:3,6
    25:10,13 26:3,9
    26:14,16,19,21
    27:6,11,19,22
    28:4,23 29:2,15
    29:22,24 30:2,5
    31:8 33:16,18
    34:15,18,24 35:3
    35:19,22,24 36:2
    36:4,7,13,15,18
    36:23 37:6,9,19
    37:23 38:1,11,13
    38:15 39:1,7,13
    39:18 40:2,4,9,12
    41:11,16,19 43:10
    43:15 44:6 46:9
    46:20,24 48:2
    49:3
courtroom 3:22
covenant 10:21,22
    10:22 14:3,11
    24:3 25:8
covenants 5:19
    6:25 10:20 13:9
    13:22 14:19 18:2
    18:21 19:16,23
    34:5
covers 46:15 47:4
credit 24:20 42:14
cultivated 15:3
    18:13
current 23:21
currently 24:1
customer 10:3
    17:18 18:11 20:14
    21:1 31:11
customers 14:8,9
    18:1,9 19:17
    25:16 40:11

**D**

**D** 2:1
**damage** 10:8,9,10
**damaged** 11:8
  41:15,23
**date** 13:4 24:4 35:2
  49:11
**dates** 35:1
**day** 10:14 20:17
**day-to-day** 30:9
**decade** 9:15,18
  11:11,20,20
**decency** 17:13
**defendant** 1:6,14
  15:19 17:11 24:11
  24:16 31:3 43:5
  43:14
**defendants** 2:4 6:1
  6:3,11 8:20,21
  9:20 10:1,23 13:2
  13:3,5 14:24
  15:10 18:13,18
  19:1,3,23 25:18
  30:23 33:24 34:4
  36:8 39:5 40:15
  42:15 43:10,11,12
  44:23 45:11,12
  47:2,5
**defending** 44:24
**Delaware** 9:21
  13:18,21
**delighted** 9:4
**demonstrates**
  34:22 35:9,11
**Dena** 49:3,11
**denial** 26:8
**Denver** 31:21
**deny** 30:18
**department** 38:9
**depends** 10:13
**depositions** 4:7
**derail** 18:15 22:10
**describe** 11:6 15:21
  33:23 36:7
**described** 13:9
  21:14 45:12
**describes** 36:4

**description** 13:13
  34:2
**desire** 4:6 32:17
**detailed** 34:11,20
  35:6
**detecting** 11:4
**determine** 38:5
**determined** 39:4
**determining** 38:16
  39:20
**develop** 29:4 33:20
**different** 4:12 23:6
  44:14
**difficult** 44:24
**difficulties** 8:18
**dimensions** 38:23
**direct** 30:25 44:21
**directly** 22:15 24:8
  41:7 44:18
**disagree** 27:22
**disclose** 10:22
**disclosed** 15:23
**discloses** 15:18
  17:10
**disclosures** 15:15
**discovery** 4:7 27:13
**discussed** 25:23
  27:3
**dispatch** 38:9,24
**DISTRICT** 1:1,1,9
**disturb** 47:3
**divert** 21:9
**Dobrosky** 1:14
  3:11,12,20,23 4:1
  4:21,23 5:1 6:16
  6:22 7:25 8:5
  12:18,22 21:25
  22:2,4,7,9 24:1,3
  25:3,5,9,12,20
  26:5,20 27:1,7
  28:5,23 29:1,6,17
  29:23 30:1,3,8
  31:10 33:17 34:5
  34:8,16,20,25
  35:4,20,23 36:1,3
  36:6,10,14,17,20
  36:24 37:7,18,20

**37:24 38:6,12,14
  38:18 39:6,10,14
  39:22 40:3,5,10
  40:13,19 41:13,18
  41:21 43:12,16
  46:6 47:24
**Dobrosky's** 11:15
  27:25
**docket** 47:6
**document** 13:8
  23:14 32:25
**documents** 15:9
  42:13
**doing** 11:9,11
  17:20 31:18 33:7
  35:16,17
**dollars** 25:16,17
  40:8 45:13
**doubtless** 8:22
**dry** 10:9 30:23,24
  41:4,4,11,14,17
  43:5,14
**drying** 30:25 31:19
  41:5,13
**due** 11:17 47:7
**duration** 13:14
  14:12
**dwellings** 32:11

**E**

**E** 2:1 49:1
**eager** 6:22
**earlier** 6:2 13:10
  17:21 20:8 24:20
  29:18 30:14
**earn** 19:7
**easier** 5:14
**EASTERN** 1:1
**easy** 45:13
**effect** 19:1
**eighteen** 14:5,13,22
  14:22
**either** 13:4
**elbow** 9:12
**electronic** 1:22
  49:5
**eleven** 9:18

**emergency** 10:16
**employed** 9:21
  10:24 13:6 14:1
  22:23,24,25 23:1
**employee** 14:1,6,16
**employees** 10:24
  14:7 15:3,25
  31:22
**employer** 23:14
**employment** 13:15
  14:4,10,13 15:13
  23:3 33:11 42:23
**endeavors** 23:22
**enforce** 6:9
**enforced** 6:2 19:5
**enforcing** 6:25
**engage** 43:17
**engaged** 41:11
**ensure** 22:12
**enter** 4:2
**entities** 22:14
**entitled** 34:13
**equipment** 11:4
  14:16 30:25 41:5
  41:12,13,14,16,17
  43:4
**ESQ** 1:11,11,14
**ESR** 1:17
**essence** 8:21 9:3
  13:22 16:19 17:10
  17:15 21:14
**essential** 47:18
**ET** 1:5
**evening** 5:11
**event** 11:23
**evidence** 15:5
  41:24
**evident** 33:13
**evil** 43:19
**exact** 23:12
**Exactly** 40:3
**example** 19:12
  37:12
**excluded** 20:15
**excuse** 15:18 41:11
  47:15
**exercise** 38:4

**exhibit** 15:11,11
  16:2,3,20,25 17:9
  34:12,13,16,18,19
  34:20 35:20 38:19
**existed** 28:12,12
**exists** 47:3
**expand** 31:22
**expanded** 31:18
**expect** 44:17 46:1
**expectation** 46:25
**expedite** 27:13
**expense** 5:3
**expenses** 45:3,7
**experience** 10:25
**expert** 21:4
**expertise** 11:6
**explain** 26:1 33:19
  44:4
**explained** 40:24
**expose** 17:25
**extended** 4:7 6:23
**extent** 19:23 21:13
  33:22,24
**extravagant** 45:5
**e-mail** 16:3,4,14
  17:8 19:25 20:18
**e-mails** 15:12,14,15
  15:17

**F**

**F** 49:1
**fact** 19:24 22:20
  31:19 32:13 39:2
  41:23
**facts** 27:17 28:24
**factual** 44:21
**fair** 33:18
**fairly** 6:9 15:6
**faltering** 24:14
**family** 42:16
**fans** 43:6,7
**far** 10:21 14:25
  24:6 32:2 40:25
  44:2,12,20,22
  45:3,4
**fashion** 26:12,24
  27:15

**feeling** 44:10
**fees** 6:12
**figure** 20:6 25:24
**find** 45:24
**fire** 10:9,10 17:15
**first** 5:12,18 15:17
  16:1,9,13 19:1
  22:18,24 23:13,14
  24:11 35:2
**five** 13:20
**flood** 33:8 41:15
**focus** 9:15 15:9,14
  15:16 24:5
**focused** 19:8,21
  23:4
**focuses** 13:19 15:1
  32:19
**focusing** 23:21
**follow** 17:5
**force** 19:6
**foregoing** 49:4
**foremost** 5:18 19:2
**form** 33:23
**formality** 3:22
**formation** 24:16
**formed** 24:12,13
**former** 10:23
**forth** 39:4
**forty-eight** 40:22
**forward** 6:21,23
  7:1 8:16,24 27:16
  27:17 45:2,7
**found** 14:6
**four** 9:19,19,24
  13:17 15:14,16
  19:11 20:13 23:19
  33:1 43:2
**four-bedroom** 35:6
  35:8 36:2,18
  39:21
**framework** 25:7
**freely** 46:3
**friends** 20:3
**fruitful** 4:25 8:4
**full** 19:6
**fuller** 33:20
**furnishings** 9:16

**G**

**further** 4:25 5:3
  8:20 13:19 20:2
  46:15,17
**future** 23:22,25

**G** 34:12,13,17,18
  34:18,19 35:21
  38:19
**gain** 15:25
**gains** 20:3
**general** 17:19
**gentleman** 24:17
  24:20
**gentlemen** 23:2
  28:13,16 31:15
  38:22
**geographic** 5:20
  14:23
**getting** 6:1 20:16
  31:5
**give** 3:10 19:16
  20:5 29:7,12
**given** 10:14,14 46:3
**giving** 45:18
**glad** 40:16 46:4
**go** 3:25 4:6 7:6 8:16
  8:24 10:4 20:22
  24:9 27:14 32:20
  33:16 37:11 38:19
  38:21,22,23 45:7
  46:13
**goes** 13:12 34:12
**going** 5:13 6:19
  24:9 25:24 26:11
  27:14,23 30:18
  32:8,8 35:5 41:24
  45:24 47:17
**good** 3:1,2,11,13,14
  3:15 5:8,22 7:22
  21:25 31:14
**goodwill** 18:5
**grant** 26:19
**gratifying** 47:22
**great** 22:5 27:3
**greater** 42:2
**guaranteeing** 10:12

**H**

**guess** 34:6 36:15
  46:23
**GUY** 1:14

**H** 1:8 15:11 16:2,3
  16:6,20,25 17:9
**half** 39:22,24,25
  45:22
**hand** 32:8 45:1
  47:2
**handles** 9:23
**happen** 38:18
**happens** 38:13
**happily** 46:4
**happy** 15:8 29:5
**hard-pressed** 41:21
**harm** 18:3
**Harrisburg** 19:14
**HARVEY** 1:17
**HaShana** 47:12
**healthy** 22:23
**hear** 4:20 5:7,15
**hearing** 1:8 8:12,16
  15:8 45:8,25
  46:11
**Heffelfingel** 15:18
**Heffelfinger** 1:5
  12:7,9,11,21
  15:12,18 16:5,17
  17:10 20:11 21:8
  22:18,23 23:11
  24:13,18,21 25:25
  26:10 27:2 28:1,8
  29:15 30:6,12
  31:17,20 33:15,21
  35:13 37:15,16
  38:3,15,21 39:9
  39:23,24 40:6,7
  43:13
**Heffelfinger's**
  27:23
**Hello** 8:2
**help** 10:9 26:8
**helpful** 11:14
**helping** 39:16
**Hi** 3:3

**higher** 40:10
**highly** 18:8 26:15
  26:17,21
**hired** 12:8,11
**hold** 16:22 18:23
  35:22
**holidays** 47:7,11,13
**Holly** 1:14 3:12
**home** 10:8,15 35:7
**homes** 9:17 17:21
  23:23 29:14 32:17
  32:18,22 34:10,23
  35:10 39:15
**honor** 3:2,11,12,13
  3:15,17,23 5:1,8,9
  5:12 6:6,13 7:10
  7:23,25 8:5 9:1,1
  9:10,14 11:24
  12:18,22 13:1,2
  13:14,19 15:8
  16:23 17:4,17
  18:7,22 19:1,3,20
  20:19 21:4,24
  22:2,10 25:20
  26:13,17,20 27:1
  27:10 28:3,5,20
  29:6,17 32:9
  33:13 34:8,16,20
  35:4,7,12 36:1,6
  36:10 38:6 39:6
  39:10,22 40:19
  41:21 42:7,8,8
  44:2,4 46:6,7
  47:24,25 48:1
**HONORABLE** 1:8
**honored** 5:20
**Honor's** 4:1 24:6
  27:4 32:24 40:24
**hooked** 42:10
**hope** 8:16 21:7,14
  40:24 44:17 47:8
  47:20
**hopefully** 46:14
**hosted** 31:20
**hour** 8:19 44:13
  45:17,18,21 46:3
**hours** 40:22

**I**

**house** 20:12
**housed** 21:1

**identification** 21:1
**identified** 5:21 13:4
  19:11 35:24 43:5
  43:14
**identifying** 28:14
**impediment** 6:15
**impinge** 32:3
**implausible** 21:21
**importance** 5:23
  10:17
**important** 16:21
  19:21
**impression** 12:8
**included** 13:13
**incorporation**
  30:21
**increased** 41:24
**incurred** 7:4
**individual** 8:21
  9:20 10:1,8,23
  13:5 14:24,25
  15:10,19 17:11
  18:13 25:18 33:24
  39:5 40:7,15
  43:11,12 45:11
**individuals** 32:12
**inducing** 14:7
**indus** 23:9
**industry** 11:9 23:8
  23:9,24 31:23
**inflate** 39:11
**information** 4:14
  5:5 10:4,18 11:2
  14:15,17 15:1
  17:19,22 18:11,12
  18:12 20:13,14,21
  21:2,9,13,18,19
  25:16,24 27:17
  31:24 39:3,7
  40:20 42:17,20
**ingredient** 47:17
**initial** 44:11 45:6
**initially** 12:11

24:17 38:8,11
**injunction** 1:8 8:13
 19:1 20:4 27:18
 45:8,9
**injunctive** 18:19
**innocent** 18:16
 22:11
**inquire** 11:18
**inquiring** 3:18
**insistence** 47:1
**instance** 38:19
**insurance** 23:24
 33:9
**intend** 33:5
**intention** 4:5,15,16
 23:21 24:15 30:10
 30:15 33:6,9
**interests** 17:18
**interject** 12:19
 27:25
**interrupt** 11:13
 25:3 27:24
**invested** 17:25
**investment** 11:1
 42:18
**invoice** 34:12 35:2
 35:15,24 40:8
**invoices** 34:14 35:1
 36:20 39:23 43:7
**invoicing** 39:23
**involved** 5:3 17:12
 22:15 30:9,18
 31:16 33:3 38:25
 41:4
**involvement** 28:11
 30:16 32:17 40:21
 41:1 42:23
**in-depth** 13:12
**irregular** 26:15,18
 26:19
**irreparable** 18:3
**irretrievably** 44:22
**issue** 5:11,25 9:19
 27:15
**issues** 5:17 24:20
 30:12
**itemization** 37:2,2

**items** 20:8 42:13
 43:2,6
**it'll** 11:16

**J**

**J** 15:11 16:3,4,9
**janitorial** 25:1
**January** 37:3
**Jersey** 9:22 13:18
 13:21 19:14
**Jew** 47:14
**job** 31:15
**jobs** 38:21
**JOEL** 1:5
**Josh** 3:6
**Judge** 1:9 3:10
 46:14 47:18
**judgment** 45:14
**jurisdiction** 18:4
**justice** 26:2
**J's** 16:13

**K**

**keep** 47:16
**kept** 17:10,13
 25:19
**kind** 40:16
**King** 9:25
**knew** 17:15 37:15
**know** 3:21 4:3,9,24
 15:7 25:10 26:8
 26:21 41:3 47:10
**knowable** 39:8
**knowledge** 18:6
**known** 28:9 39:8
 39:19
**know-how** 17:19

**L**

**L** 1:11
**Land** 1:15
**language** 19:6 36:9
**Larry** 1:11 3:14
**lastly** 29:10
**late** 4:3 5:10
**law** 1:14 14:18,20
**lawyer** 45:4
**leads** 13:8

**learned** 25:24
 30:13
**leaves** 6:16 14:16
 34:3
**leaving** 14:8,17
 18:5
**lectern** 9:5
**led** 45:1
**left** 15:13 20:16
**legal** 45:3
**length** 9:13
**lengthy** 4:11
**let's** 17:1 19:12
 23:4 35:3 47:20
**level** 46:25
**LEWIS** 1:12
**liberty** 9:6
**light** 14:18
**limited** 5:20 14:23
 34:5 42:17 45:21
**line** 22:21 34:7
**lines** 5:24
**list** 34:13,21 40:1
 43:2,18
**literally** 18:15
**litigation** 4:7 5:3
 6:8,23
**little** 12:4 20:1 26:7
 29:7 40:21
**living** 4:17 19:7
**LLP** 1:12
**locate** 17:1
**located** 9:25
**locations** 38:20
**long** 8:15
**longer** 12:9 40:21
**long-term** 10:12
 18:9
**look** 18:24 19:25
 32:10 34:18,24
 38:22 42:20
**looking** 22:10
 23:24 34:15
**lot** 6:9 17:25 21:17
**LOUIS** 1:8
**lunch** 8:15,19
 44:12,15 45:17

 46:2
**luncheon** 44:9,16

**M**

**M** 1:17
**maintain** 18:10
 32:15
**maintaining** 46:18
 46:22,22
**major** 10:7 19:14
 19:14 30:6
**making** 5:18,25
 34:4
**managed** 29:20
 30:3
**management** 23:17
**manager** 10:19,19
**managers** 17:24
**March** 12:22 22:24
**market** 1:12,24
 31:18 32:16
**marketed** 28:19
**marketing** 22:21
**Maryland** 9:22
 13:18,21
**materials** 9:16
**matter** 3:20 4:2,5,6
 7:1 8:8 18:16
 49:6
**matters** 47:9
**maximum** 14:21
**mean** 6:5 45:24
**meet** 3:9
**meets** 32:13
**memory's** 12:25
**mentioned** 13:17
 17:21 18:8 19:7
 20:8
**mentions** 23:19
**merely** 17:17
**merge** 24:15
**mergers** 12:3
**merits** 4:22 44:24
**Messrs** 30:5
**meters** 43:1
**Mid** 1:23
**mind** 26:10 35:5

**mine** 3:10
**minimum** 14:22
**minutes** 6:20 7:8
**misconveying**
 28:21
**missing** 36:16
**modest** 45:16
**moisture** 11:4 43:1
**mold** 10:9 11:5
 33:8
**moment** 11:14
 18:23 20:5 27:2,7
 28:21
**monetarily** 41:23
**money** 17:25 37:4,4
 41:25
**months** 13:16 14:5
 14:13,22,23 18:16
 24:4
**MORGAN** 1:12
**morning** 3:1,2,11
 3:15 5:8 7:6
**motives** 43:20
**move** 6:21,22 33:14
**moved** 8:11
**moves** 7:1
**moving** 27:16
**multifamily** 9:16
 17:21 23:9 32:11
 32:21
**multihousing** 23:9
**multiple** 10:11
 34:14
**multiplied** 7:5
**Multi-Family** 31:3
 31:5,13 41:8

**N**

**N** 2:1 49:1
**name** 12:2 24:18,22
 29:19 30:8,15,17
**named** 30:23
**names** 24:21 30:10
**narrows** 14:24
**national** 1:23 9:14
**nature** 42:22 44:14
**nearly** 25:14

**necessary** 45:20
47:8
**need** 4:17 5:12 11:7
46:2,11 47:16
**needed** 11:3 31:12
36:24 38:24
**Needless** 7:4
**needs** 10:7 32:14
46:16
**network** 21:8
**New** 9:22 13:18,20
19:14
**Nice** 3:9
**night** 32:21
**ninety-nine** 23:4
**noncompete** 5:19
13:10,12,13,15,24
22:13 23:10 32:1
32:2
**nondirective** 45:16
**nondisclosure** 5:19
13:11 14:11
**nonprevailing**
44:25
**nonsolicit** 13:10
14:12
**nonsolicitation**
5:20 10:22 14:3,5
32:2
**northern** 19:14
**note** 18:18 20:9
46:18
**number** 15:15
18:16 20:10 23:9
24:11 27:3

—————————
**O**
—————————

**O** 49:1
**oath** 26:4,6,10
**obligations** 6:1
**obviate** 46:15
**obviously** 5:5 23:17
39:1 40:5 44:11
**Occupied** 36:3
**October** 12:18 23:1
**office** 9:25
**official** 49:5

**Oh** 7:18 16:7 28:4
34:25 43:15 46:24
**okay** 4:21 5:15 7:19
12:24 13:7 24:3
25:12 38:18 41:20
**old** 9:15
**once** 14:3
**ones** 31:17
**one-third** 24:17
**open** 7:12 34:4
**opened** 7:17
**opening** 2:3,4
11:14 44:7
**operate** 4:18,18
39:17
**operated** 22:12
28:8 30:20
**operates** 10:10
23:14
**operating** 11:24
12:2 35:18
**operations** 9:24
18:6 30:9,17 31:1
32:4 33:3 42:2
**operator** 1:17 30:4
**opportunities** 15:2
**opportunity** 8:20
19:7,13,16,18
20:6,21 43:23
**order** 11:8
**orderly** 26:23
27:15
**original** 16:4
**ought** 44:14
**Outright** 15:20
**outside** 7:14 24:23
25:7,23 31:4,7
**overall** 13:8
**overcoming** 8:18
**overview** 15:6
**owned** 13:4
**owner** 10:15
**owners** 15:19
**o'clock** 7:6 45:18
46:1,13

—————————
**P**
—————————

**PA** 1:4,13,16,24
**page** 16:1,20,24
17:9 18:18 23:14
25:13 35:5 49:3
49:11
**pages** 16:1
**paid** 19:25 37:4,5
37:21,21
**painting** 25:1 28:15
**papers** 19:22
**paragraph** 13:12
14:6,11 18:20
20:22 23:13 25:8
25:13 26:1 33:19
33:21 34:9
**parameters** 4:13
6:3
**pardon** 12:1 26:16
**part** 29:7,8 32:7
37:12 38:1,1,2
47:17,18
**partially** 30:19
**participated** 39:20
**participation** 47:22
**particularly** 18:15
19:24
**parties** 5:2 8:17
20:5 30:16 44:8
44:17,21 45:19
46:13,19,22 47:1
**Pause** 27:9 28:22
**pay** 6:11
**Pennsylvania** 1:1
9:22 13:18,20
14:20 19:12
**people** 17:24,25
18:17 19:9 22:11
**perceived** 10:15
**percent** 23:4
**perfected** 11:9
**perfectly** 3:24 9:6
29:2,5
**perform** 11:2 36:8
**performed** 9:20
10:2 14:1 25:18
34:21 35:14 36:5
37:7

**performing** 10:5
**period** 24:4 25:14
28:10 29:24 30:1
**permanent** 45:9
**permitted** 33:6
**person** 29:20,20
30:3
**personal** 15:25
20:3 42:13,14,16
42:21
**personally** 31:4
**persons** 39:4
**pertaining** 42:14
**Philadelphia** 1:4
1:13,16,24
**photos** 42:17
**physical** 13:16
**pictures** 42:16
**pinpoint** 23:7
**place** 9:5 21:1,7
**placed** 26:10 29:3
**places** 23:6,7
**plain** 6:6
**plaintiff** 1:3,11 2:3
5:5 11:19 21:2
26:22 27:12 39:2
39:8 42:16 45:1,3
45:4,10 47:2,5
**plaintiffs** 7:4
**plaintiff's** 8:22
34:11 43:22
**planning** 23:23
**played** 37:16
**pleadings** 45:6
**please** 3:3 8:2 46:9
46:9
**point** 7:2 9:10 15:7
15:23 16:1,14,21
23:2 26:11 28:7
30:6 35:4 36:16
**pointed** 16:17
20:18
**Pollak** 1:8 47:12
**posed** 16:15
**position** 28:2,24
31:25 32:1,24
37:10,12,14 38:5

**40:25 44:24
**possible** 4:4 45:9
**possibles** 4:9
**possibly** 45:21
**preferred** 9:5
**preliminary** 1:8
8:13 20:4 40:17
45:8
**preparation** 45:6
**prepared** 15:12
43:23
**present** 37:11
**presentation** 26:23
**presumably** 45:5
**presumed** 18:6
**pretty** 18:4
**prevent** 10:9 11:5
**prevented** 20:15
**price** 21:1 38:5,16
39:20
**prices** 38:7,10
**pricing** 10:4 17:19
18:11 20:14 37:21
37:22,24 38:25,25
39:12,25 40:1,6
**primary** 9:15 22:17
22:19 29:21 30:4
30:15
**principal** 19:2
**principals** 33:24
**prior** 4:3 10:24
28:9,10 30:21
33:15
**private** 23:23 29:14
29:14 32:17,18
33:8 34:10,23
35:10 39:15
**probably** 17:7
40:12 44:14 46:15
**proceed** 8:12,25
26:12 27:23 40:18
45:20
**proceeding** 44:18
**proceedings** 1:22
46:15 49:6
**productive** 5:10
**profess** 21:3

**profit** 39:17
**profits** 25:19 41:25
  41:25
**progress** 5:24 6:18
  8:14
**prohibited** 14:7
**promise** 44:3
**promoted** 31:10
**promptly** 8:23
**proof** 11:17 21:22
**property** 16:18
  33:14 42:5,25
  43:3,9,16,17,24
**proposed** 4:13
**proprietary** 14:14
**proprietor** 39:21
**protect** 17:17
**protected** 17:22
**provide** 8:19 28:18
  31:12
**provided** 9:24 11:1
  24:25
**providing** 25:15
  34:10
**provision** 23:19
**provisions** 25:22
**Prussia** 9:25
**purchased** 43:8
**purpose** 11:6
**purposes** 15:16
  22:22
**pursue** 40:16 44:19
  47:9
**pushing** 44:12
**put** 8:8 18:16 21:7
  22:11 24:18,22
  27:17 28:23 37:10
**p.m** 46:8,8

**Q**
**quarter** 46:3
**question** 4:2 16:15
  25:21 26:6,11,24
  27:4 29:3 37:10
  47:12
**questioning** 40:16
**questions** 15:8

40:13 44:4
**quo** 20:5 46:19,22
  47:3

**R**
**R** 1:14 49:1
**ranging** 11:4
**rates** 37:25
**rationale** 10:16,18
**reach** 5:14 6:23 8:6
**realize** 17:22
**really** 18:10 28:25
  40:13
**reason** 42:11 44:13
  45:10
**reasonable** 14:19
**reasons** 15:14
  17:14 20:11
**received** 44:20
**receiving** 10:13
**recess** 8:1 44:9,10
  44:15,16 45:17
  46:8 47:23
**recital** 23:12,13
  33:22 35:12 44:21
**reciting** 11:16
**recognizes** 14:20
**recommendation**
  45:16
**record** 46:10,21
  47:11
**recorded** 1:22
**recording** 1:22
  49:5
**records** 4:8,9
**recovering** 45:12
**refer** 31:13 35:7
**reference** 23:5
**references** 23:18
  24:25
**referred** 35:25
  47:11
**referring** 39:14
**refines** 13:19
**refused** 20:19
**regard** 20:1 24:7
  28:16 29:3,10

32:14 39:16 43:18
**regarded** 34:5
**regarding** 20:13
  46:18,21
**Region** 1:23
**relation** 31:9
**relationship** 10:13
  28:7,17 42:23
**relationships** 10:3
  10:17 15:2,24
  17:18,23 18:11,13
  19:17 20:14 25:23
**relevant** 23:20
**relief** 18:19
**remain** 22:4
**remediation** 33:7
**remove** 42:7,12,12
  42:21
**removed** 42:6,13
  42:16,17,24 43:24
**rental** 30:24 41:5
  41:12,13
**rented** 41:17
**REPORTER** 3:17
**Reporting** 1:23
**representation**
  33:15
**representative** 18:5
  43:20
**represented** 33:25
**request** 34:21 37:8
**requesting** 47:4
**required** 3:22
**requires** 14:15
**residences** 33:8
**residencies** 11:8
**residential** 9:17
**resolution** 6:18,23
  8:11
**resolved** 5:11 30:11
**resources** 20:2
  30:24 43:6,14
**respect** 5:5 6:25 7:3
  13:2,24 14:3,23
  16:16 17:20 18:3
  18:25 39:2
**respectfully** 34:8

**respond** 26:11 28:6
**responds** 16:5,19
**response** 16:4,15
  26:1 27:4,16 29:8
**responses** 44:20
**responsibilities**
  38:4
**responsibility**
  21:12 29:21
**rest** 13:22,23 20:15
  40:11 47:8
**Restoration** 24:12
  24:16 34:13,22
  35:9
**restoring** 9:15
**restrictions** 13:17
**resume** 46:11
**retrieve** 45:3
**return** 20:4,17
  43:21,24
**returning** 20:20
**returns** 14:16
**right** 7:14,22 9:2,8
  9:11 11:12 12:20
  12:20,24 16:8
  17:3 18:24 21:8
  22:22 26:19 27:6
  28:4 30:2,7 40:4,9
  40:12 41:19,20
  43:15 44:6
**risk** 44:25
**role** 33:25 37:17
  38:16 39:9
**roles** 30:6
**room** 7:11
**Rosh** 47:12
**route** 21:9 27:14
**routinely** 17:22

**S**
**s** 45:16
**sake** 15:7
**sales** 10:19 24:23
  31:4,7 32:5,7,19
  37:2 43:20
**salesmen** 17:24
**salesperson** 32:6,6

**satisfaction** 40:25
**saying** 24:6 38:15
**says** 6:22 17:10
  25:13 35:8
**SCIOLLA** 1:14
**scope** 14:23
**SEAN** 1:11
**second** 5:25 15:23
  16:22 25:4 35:22
**secondarily** 38:13
**secret** 17:12,13
**secretly** 25:19
**see** 3:13,14 7:20
  8:15 9:9 11:23
  12:5 16:7 17:1
  20:18 32:19,21
  35:3 37:6 39:18
  42:21 43:15 46:4
**seeing** 6:21
**seeks** 17:17
**sense** 6:17 40:14
**sensitivity** 18:7
**sent** 36:20
**separation** 13:16
  14:5,14
**September** 1:5
  46:12
**server** 42:10
**service** 10:18 17:23
  31:12 36:5,7
**services** 9:20,23
  13:24,25 15:1
  25:1,15 28:15,18
  29:11,12 34:3,21
  37:5
**set** 20:19 38:7,8,8
  38:10,24
**setting** 10:6
**settle** 4:6
**settled** 18:4
**settlement** 4:4,13
  4:16 8:6,9,19
  44:19
**settling** 45:2
**seven** 13:20
**shot** 3:10
**show** 21:22 23:7

41:22,24 43:7
46:10
**shows** 35:15,16
37:1,3
**sic** 24:19
**sides** 33:19 47:21
**sign** 10:19 18:1,9
**signed** 19:4,24
22:13
**significant** 5:18
20:10 28:10 33:25
37:17 44:25
**similar** 13:25 14:12
**similarities** 40:5
**simply** 11:2 39:14
45:2
**single-family** 9:17
17:21
**sir** 3:6,8
**sit** 3:3,16 5:13 8:2
46:9
**site** 32:20
**sitting** 3:24
**situation** 6:10
10:11 21:15
**situations** 14:21
**Sloan** 1:11 3:20 5:6
9:11 48:1
**slower** 47:16
**smoke** 33:7
**sold** 31:6,10
**solicit** 7:1 23:23
**Solutions** 31:3,6
**sorry** 11:25 24:24
29:14 31:8 34:15
34:16 46:20
**sound** 1:22 49:5
**sounds** 33:22
**South** 1:15
**speak** 3:24
**SPEAKER** 3:10
**special** 11:3,8,10
**specific** 19:8
**spend** 6:20 45:17
**spoke** 30:12 31:21
**stand** 3:21 26:4
33:21 40:15

**standpoint** 10:4
14:19 15:5 27:15
**start** 4:19
**started** 16:15 22:18
**starting** 13:11
**statement** 2:3,4
11:14,15 27:25
28:1 29:8,9 39:19
40:17 42:6 44:2,5
**statements** 44:7
**states** 1:1,9 9:18,19
9:19,24 13:17,23
13:23 14:25 19:9
19:11,12,15 20:13
20:15
**stating** 33:13
**status** 20:5 46:19
46:22 47:3
**stay** 9:6 19:21
**stemming** 17:19
**step** 33:4
**Steve** 17:14
**stole** 16:18,19
**storm** 10:7,7
**Street** 1:12,15,24
**Stree-ok** 3:6,8,9
**strictly** 32:25
**Strie-ak** 3:5,7
**Strie-jak** 3:7
**strikes** 21:21
**string** 16:3
**strong** 44:9 46:25
**Stryjak** 3:6,8 12:7
12:9,13 22:19,25
23:11 24:19,22
28:8 29:16 30:5,5
31:17,20 32:5
35:13 37:15,16
38:3,16,20 39:9
39:25 40:7 43:13
**Stryjak's** 24:14
30:13
**subcontract** 37:1
**subcontracted** 34:3
36:21
**subcontractor**
25:14 36:9

**subpoenaing** 4:8
**substantial** 11:1
20:12 21:11 45:7
45:11,13
**substantially** 7:5
13:5,25 23:15
25:17
**suggest** 44:14 46:2
**suggests** 6:24
**Suite** 1:24
**summarize** 13:14
**summary** 29:7
**Summit** 24:11,16
24:24 25:15,16
28:8,9,12,13,17
28:18,19 29:10,10
29:12,16 30:3,4
30:21 31:5 33:23
34:1,10,13,21
35:9,15,17 36:5
36:11,13,21,21,24
36:24 37:4,8,13
37:17 39:9,20
40:2,24 41:1
**supplementary**
28:1
**supplied** 5:6 15:6
**suppose** 6:19
**sure** 5:18,25 6:5
7:24 16:23 19:22
22:6,8 25:5,9 27:4
27:19 28:6 32:10
33:17 35:23 45:6
**surely** 7:13 46:24
**surmised** 42:9
**surrendering** 44:23
**suspending** 46:11
**sustained** 38:2
**sworn** 27:25
**system** 21:7,8,19

<hr>
**T**

**T** 49:1,1
**table** 9:7
**tag** 22:21
**take** 8:15 10:14
18:23 19:12,25

25:7 26:22 39:7
39:18 43:19 44:16
44:17 47:6
**taken** 20:10
**talk** 6:3 32:13 33:1
45:19
**talked** 20:13
**talking** 6:20 7:7,9
10:6,21 11:21
16:2 21:5 23:25
25:6
**talks** 24:2 32:11,23
**technician** 10:19
22:25 23:2 38:19
38:21
**technicians** 17:23
**TECHNOLOGI...**
1:2
**tell** 8:3 11:20 20:24
22:3 23:5 25:8
47:7
**telling** 17:8
**term** 13:15 14:13
14:20
**terminated** 20:17
**termination** 24:5
**terms** 14:20 20:20
**territory** 14:7
**testify** 42:3
**testimonials** 32:12
**testimony** 11:17
26:23 27:14 29:5
33:12 40:18 41:16
42:4 44:11,12,18
45:23
**thank** 3:3,17 5:16
7:21,23,25 9:1
12:24 17:3 18:24
21:23 22:7 29:6
40:19 46:6,7
47:21,24,25 48:1
**thanks** 17:2
**thereabouts** 12:12
**thing** 22:9 45:14
**things** 6:21 8:10,15
11:5,7 27:3 31:18
33:1 47:20

**think** 4:13 5:24
6:15 7:15 9:2,2
12:15 16:21 17:7
18:4 19:2,20
25:25 26:1 33:18
35:25 37:10 38:1
40:22 41:23 42:1
42:3 44:8,14
45:10,17 46:15
47:3,17
**thinks** 26:22
**third** 16:14 24:19
31:2
**thirty** 6:20 7:8
**thought** 5:4,9 8:10
12:25
**thoughtful** 47:22
**thoughts** 7:3
**three** 4:11 10:20
12:13 13:9,21
23:6,7,10,12
40:10
**three-year** 14:20
**thrust** 27:19,21
**time** 9:21 10:1 13:6
13:15 14:1,4 15:3
18:6 19:4 20:1
22:21 28:10 29:16
31:1 32:8 44:7,9
45:19,21,25 46:2
47:16
**times** 11:19 40:10
**tip** 40:20
**Title** 1:15
**today** 9:19 13:8
15:16 42:18 43:1
45:23 47:3,7
**toes** 33:4
**told** 17:15 28:20
31:22 35:12
**tomorrow** 45:22
**tone** 44:20
**tongue** 40:21
**Tony** 7:15
**top** 35:20
**touch** 8:22
**town** 35:6

**town-home** 35:8
  36:2,18 39:21
**training** 11:1
**transcriber** 49:3
**transcript** 1:8 49:4
**transferred** 24:21
  29:19 30:14
**traveling** 19:10
**tried** 4:9 8:5
**true** 49:4
**truly** 10:12 19:21
**try** 6:4 33:20
**trying** 5:11 31:14
**Tuesday** 46:12
**turn** 17:4
**Turner** 1:11 3:13
  3:15,20 4:4,11 5:6
  5:7,8,15,17,23 6:6
  6:8,13,16 7:10,19
  7:21,23 8:24 9:1,4
  9:8,10,13 11:13
  11:22,24 12:2,6
  12:10,15,17,25
  16:3,8,10,13,23
  16:25 17:4,7
  18:22,25 20:22,23
  21:3,6,20,23 26:9
  26:12,13,15,17
  27:10,12,20,21
  28:2,3 42:6 46:7
  46:18,21 47:25
**Turner's** 29:8
**twenty-four** 13:16
  24:4
**two** 5:17 6:2 10:1
  10:23 14:10,22,22
  15:9,17 17:13,15
  23:11,18 25:14
  30:22 43:1
**two-fold** 5:12
**type** 9:16
**types** 11:3

———————
        **U**
———————
**ultimately** 30:11
**um-hum** 12:13
  16:12 17:3 36:23

46:24
**unable** 4:10,15 8:6
**unanswered** 29:3
**uncertain** 28:25
**uncertainties** 5:3
**understand** 6:14
  21:16 24:6 26:24
  33:20 36:4 38:6
  43:3
**understanding**
  11:15 12:10 13:3
  21:6,15 38:7 42:2
**understood** 20:24
**undertaken** 3:19
**undertaking** 28:24
**unfairly** 40:13
**unfortunate** 8:7
**Unfortunately** 4:13
**UNIDENTIFIED**
  3:10
**unilaterally** 25:18
**unique** 11:10
**UNISON** 3:2
**UNITED** 1:1,9
**unsolicited** 15:12
  16:14
**unusual** 26:12
**use** 7:11 43:17
**useful** 44:9
**usually** 39:17
**utilize** 29:11
**utmost** 5:23

———————
        **V**
———————
**valid** 34:7
**valuable** 21:17
**various** 25:6
**Vendor** 31:3,5
**ventures** 24:9
**Venturi** 1:2 4:8,19
  8:23 9:21,23 10:2
  10:3,24,24,25
  12:3 13:6 14:2,10
  15:4,13,13,20,22
  15:25 16:16 17:17
  19:4,18 20:2,5
  21:7,18 22:14,16

22:17,19,21,22,24
  23:1,3 24:8 25:14
  25:18 28:8,11,17
  28:18,19 29:11,13
  31:1,6,9,11,11,12
  31:16,21,22 32:6
  32:13,16,18 33:4
  33:11 34:2,21
  35:11,13,18 36:8
  36:11,21,22 37:1
  37:2,4,5,7,13,14
  37:15,22,22 38:4
  38:5,7,9,19,23,24
  39:4,15,16,17
  40:11 41:2,7,9,17
  41:22,25 42:7,9
  42:11,20,23,25
  43:3,6,19,25
**Venturi's** 9:14
  19:17 20:2 23:7
  32:3 37:24 43:9
  43:17
**veracity** 8:10
**Veritext** 1:23
**view** 27:23
**vs** 1:4

———————
        **W**
———————
**wait** 26:23 29:5
**walked** 16:18
**WALKER** 1:11
**want** 3:18 4:20,24
  7:8,15 8:24 15:13
  15:15 17:5 18:23
  21:25 27:3 28:23
  40:16 47:21
**wanted** 11:18 17:1
**warrant** 27:18
**wasn't** 35:15
**water** 10:10
**way** 8:18 9:23 10:4
  11:9 19:18 20:4
  22:12,23 35:18
  41:9,23 44:10
**web** 32:20
**week** 10:14 45:24
  46:12

**welcome** 3:21
**went** 4:12
**weren't** 35:16
**we'll** 8:12
**we're** 6:3,19 9:3
  10:5 18:21 27:13
  27:23 47:23
**we've** 6:8 7:17 8:6
  10:20 14:21 15:5
  27:17
**whatsoever** 10:25
  42:22
**wholesale** 30:24
  41:5,12,13
**wide** 11:5
**willing** 6:3 26:5
  27:12 29:2 31:25
  42:20
**wish** 26:12 40:17
  45:4 47:20
**witness** 26:4 27:24
  40:15
**work** 6:4,9 10:5,13
  11:3 18:17 22:11
  23:2 25:17 31:6
  32:18 33:9 34:10
  34:14 35:9,14
  36:21 38:23 47:15
**worked** 10:1,2
  14:24 15:1 19:4
  47:20
**working** 20:2 22:18
  40:23
**wouldn't** 35:5
**would've** 8:11
**written** 10:11
**wrong** 20:25

———————
        **X**
———————
**X** 2:1

———————
        **Y**
———————
**year** 24:20 29:18
  30:14
**years** 12:14 14:10
  14:22 15:24 18:14
  19:9 25:14 30:21
**yesterday** 4:3,12

5:10 6:17 30:13

———————
        **0**
———————
**04** 12:17
**05** 12:17

———————
        **1**
———————
**1** 16:20,24
**1st** 37:3
**10/5** 35:24
**10/7** 35:5
**10/7/2009** 35:25
  37:13
**10:30** 6:19
**10:32** 8:1
**100** 1:15
**11** 7:6 25:13
**11,000** 25:15,17
**11:25** 8:1,14
**11:28** 8:14
**12/25/2008** 35:2
**12:38** 44:7
**12:43** 46:8
**14th** 46:12
**1701** 1:12
**1800** 1:24
**1801** 1:24
**1910** 1:15
**19103** 1:13,24
**19110** 1:16
**1999** 11:21

———————
        **2**
———————
**2** 45:18 46:1,4,12
**2:10-CV-04471-LP**
  1:3
**2:41** 46:8
**2:43** 46:10
**2000** 12:11,20,23
  13:1 22:18,24
**2005** 12:18,20 13:1
  22:19 23:1
**2006** 24:12 29:17
  30:21
**2007** 37:3
**2008** 31:20
**2009** 35:6
**2010** 1:5 29:18 37:3

**22** 2:4

**3**

**3** 16:1
**31st** 37:3
**310** 40:8

**4**

**4** 16:1,1 18:18
**48** 25:13 33:19 34:9

**5**

**5** 13:12 17:9

**6**

**6** 14:6

**7**

**7** 14:11

**8**

**8** 18:20
**888-777-6690** 1:25

**9**

**9** 1:5 2:3
**9/12/2010** 49:9
**94** 11:22 12:6
**97** 11:22 12:6